**SEWELL v. UNITED STATES.**

No. 47322.

Court of Claims.

Oct. 6, 1947.

W. A. Sutherland, of Washington, D. C. (Randolph W. Thrower, of Atlanta, Ga., and Sutherland, Tuttle & Brennan, of Washington, D. C., on the brief), for plaintiff.

J. W. Hussey, of Washington, D. C., Sewall Key, Acting Asst. Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiff, a resident of Atlanta, Georgia, duly filed his income tax returns for the calendar years 1938, 1939, 1940, and 1941 in Atlanta, Georgia, and paid the tax shown thereon.

2. The Commissioner of Internal Revenue increased plaintiff's reported income for each of the years involved by including therein dividends paid on 558 shares of the common stock of the Sewell Manufacturing Company in the amount of $5,580 for the year 1938 and the dividends on 660 shares of the same company's stock in the amounts of $18,480, $11,880, and $9,900, respectively, for the years 1939, 1940, and 1941.

3. The resultant additional taxes were paid by plaintiff, and claims for refund for each of the years involved were timely filed by plaintiff on May 27, 1946. The grounds set forth in the claims for refund were that the stock upon which the dividends in the amounts indicated were paid was owned by Mrs. Mary W. Sewell, wife of plaintiff. The claims for refund were rejected on August 16, 1946.

4. About 1919 plaintiff and two brothers organized a partnership to engage in business as manufacturers of clothing. In 1931 the business was incorporated under the laws of the State of Georgia as the Sewell Manufacturing Company. Upon incorporation, plaintiff received 775 shares of the common stock of the company and was elected a member of the Board of Directors. The three brothers and members of their families, together with one A. R. Lovvorn, a relative of plaintiff's wife, have been the principal stockholders of the company since its incorporation. At the end of 1933, plaintiff was the owner of 675 shares of the 5,000 outstanding shares of the stock of par value of $20 per share.

5. Early in 1934 plaintiff and his two brothers discussed among themselves the idea of giving some of their stock to their wives. Plaintiff at that time did not decide to make the gift, as he wished to think it over. The other brothers caused transfers of some of their stock to be made to their

wives at that time. In December 1934 plaintiff indorsed in blank the certificates covering 500 shares of his stock, and on June 1, 1935, after dividends on the stock had been declared between January 1, 1935, and June 1, 1935, and credited to his account, plaintiff directed the transfer on the records of the company of 500 shares of his stock to his wife as of January 1, 1935, with a correction of the crediting of the dividends. A certificate of stock was prepared showing 500 shares in the name of his wife, and the old certificates in the name of plaintiff for that amount were canceled. The certificate remained in the stock certificate book until 1946, and plaintiff's wife, in July or August 1935, indorsed in blank the certificate in order that plaintiff might use it as collateral for a loan if he so desired. It was the general practice of all the stockholders of the company to leave their stock certificates in the stock certificate book. The book was kept in a vault in the company's office and plaintiff's wife had access to the vault and frequently kept personal papers and possessions in it. During the year 1936, 58 additional shares of the stock were paid for out of the proceeds of the dividends previously declared on the 500 shares, and it is stipulated between the parties that the inclusion of the dividends on these 58 shares of stock in plaintiff's income shall be governed by the decision as to the dividends on the 500 shares of stock. Prior to the end of 1938 plaintiff caused to be transferred on the records of the company, to his wife, a lot of 102 shares of stock in the company, then covered by a certificate in his name. A certificate for this number of shares was prepared in his wife's name, the certificate being dated December 28, 1938. This certificate remained in the stock certificate book until August 20, 1946, when plaintiff's wife received it.

6. The internal operations of the Sewell Manufacturing Company were handled very informally. The stockholders never received formal notice of stockholders' meetings and the Sewell wives during the years here involved never attended such meetings nor issued proxies for their stock. Voting at the stockholders' meetings was not done on the basis of specific stock ownership. Dividends were not paid by check but the amounts thereof were credited to the various stockholders of record on the books of the company. The company acted somewhat as a bank for its stockholders. Transfers by way of loans were made from time to time from the account of one stockholder to another, even in the absence of the particular stockholder from whose account the funds were being transferred, under direction of the secretary, which practice was known to all the stockholders. Usually in such cases notes were prepared to be signed by the stockholder to whom the account was transferred, but such practice was not always followed.

Plaintiff's wife agreed with plaintiff that any amount standing to her credit on the books of the company m'ght be used by plaintiff at any time that he needed it and she did not. Amounts standing to her account were occasionally transferred to his account and at times the entire amount of her account was so transferred. Notes as evidence of the indebtedness were sometimes executed by plaintiff but not always. This was the usual practice prior to the years here involved, but no transfers were made from her account to his account during the years involved. Credits from plaintiff's account to his wife's account were also made at times, and by the middle of 1945 credits had been made from his account to her account to balance all previous transfers and all notes had been paid. No amounts were credited from plaintiff's account to his wife's account representing interest on amounts transferred from the wife's account to his account, but interest on some of the transferred accounts was paid by plaintiff to his wife.

Plaintiff had occasion, from time to time, to prepare and file statements with banks for credit. In a signed statement filed with the First National Bank of Atlanta, Georgia, as of April 1, 1935, plaintiff included among his assets the 500 shares, a certificate for which was made out to his wife in June 1935, as of January 1, 1935. In 1936 and 1937 plaintiff filed similar statements in which the 500 shares of stock were not included in his assets. In the 1937 statement was this comment: "558 shares of Sewell Mfg. Co. common stock owned by my wife and controlled by me—are not included."

None of the statements disclosed any indebtedness to his wife.

7. Mary W. Sewell, plaintiff's wife, reported as her own income in her income tax returns the amounts credited to her own account as dividends on the Sewell Manufacturing Company stock during the years 1935 through 1941, inclusive. In all cases where the Commissioner of Internal Revenue included the dividends in the income of plaintiff, the amounts thereof were excluded from the wife's income and her taxes were adjusted accordingly. Plaintiff's counsel at the hearing in this case stipulated that proper adjustment of the wife's liability for taxes on the income involved will be made, if it be held that the dividends are not taxable as plaintiff's income.

8. In 1939 Mrs. Sewell's account on the books of the Sewell Manufacturing Company was charged certain amounts totaling $7,135, which amount was paid in relation to a home being built on a lot belonging to her. In 1940 and 1941 there were transfers to Mrs. Sewell's bank from the account with the Sewell Manufacturing Company, of $9,850 and $7,850, respectively, and from that bank account Mrs. Sewell made expenditures as follows:

| | 1940 | 1941 |
|---|---|---|
| Household and personal expenses, including clothing | $1,557 | $1,270 |
| Contributions | 1,774 | 165 |
| House and grounds | 580 | |
| Insurance policies | 5,185 | 5,100 |
| Care of mother | 100 | 363 |
| Property taxes | 419 | 415 |

Prior to 1939, expenditures of the character listed were generally paid by Roy B. Sewell, the plaintiff. Plaintiff and his wife have two children and maintain two homes, one in Atlanta and another in Haralson County, Georgia. The record does not show total expenditures of the family for household and personal matters nor the amounts expended by plaintiff during these years for household matters and the personal comfort or pleasure of Mrs. Sewell. Most of the life-insurance policies referred to were on plaintiff's life, with about one out of every four or five being policies on the life of Mrs. Sewell. The evidence does not disclose the circumstances surrounding the taking out of the insurance nor the beneficiaries.

9. Plaintiff, in September 1940, filed gift tax returns relating to the stock transferred in 1935, after a Revenue agent had called his attention to the matter, and also at that time filed an amended gift tax return relating to the transfer of 102 shares in 1938. The gift tax returns reported the value of the stock as follows:

> 500 shares—$60,277.40 as of the reported date of gift, January 1, 1935.
> 102 shares—$15,601.92 as of the reported date of gift, December 28, 1938.

On March 8, 1938, plaintiff filed a gift tax return relating to a transfer in 1937 to his wife of shares of stock in another company, which stock was reported to be of the value of $6,253 as of the date of the reported gift, January 1, 1937. No tax was shown due on this latter return.

10. For the years 1938, 1939, 1940, and 1941, plaintiff's wife filed separate income tax returns, including within her income the dividends credited to her account from the stock herein involved. The amount of the inclusion of dividends and the net income shown on the returns were as follows:

| | Dividends | Net Income |
|---|---|---|
| 1938 | $5,580 | $5,184.32 |
| 1939 | 18,480 | 18,204.86 |
| 1940 | 11,880 | 9,148.43 |
| 1941 | 9,900 | 8,941.47 |

The net income reported by plaintiff on his returns, which excluded the dividends involved, was as follows:

| | | | |
|---|---|---|---|
| 1938.... | $29,277.06 | 1940.... | $16,059.09 |
| 1939.... | 17,651.43 | 1941.... | 32,580.41 |

11. For the years 1935, 1936, and 1937, returns were filed by plaintiff and his wife in which the dividends on the 500 shares of stock, certificates of ownership of which had been made out to plaintiff's wife in 1935, were not included in plaintiff's return but were included in plaintiff's wife's return. The Commissioner of Internal Revenue, upon audit of the returns, included the dividends, among other things, in plaintiff's income. The resultant deficiencies were appealed by plaintiff to the Tax Court. Simi-

lar appeals by plaintiff's brothers were consolidated by the Tax Court for trial. On February 7, 1944, the Tax Court decided plaintiff's appeal in favor of the Commissioner of Internal Revenue, finding as an ultimate fact that: "None of the stock transfers in question were intended by the Sewell brothers to vest dominion and control over the shares of stock transferred in their respective wives. It was their intention to retain, and they did retain, that control and dominion in themselves. Each of the wives knew such intention existed, and each impliedly agreed that her husband retain control over the stock in her name. Completed gifts of the stock certificates so transferred were not made."

Subsequently a number of motions for reconsideration, etc., were made, hearings had thereon, and the Tax Court's final decision was entered October 11, 1944.

On January 9, 1945, plaintiff filed his petition with the Circuit Court of Appeals for the Fifth Circuit, seeking review of the Tax Court's decision. Orders were subsequently issued extending the time for preparation and transmission of the record to the Circuit Court of Appeals to June 1, 1945.

12. On June 9, 1945, plaintiff executed a trust instrument by which he conveyed to the First National Bank of Atlanta, Georgia, for the benefit of plaintiff's mother and others, all his right, title and interest, if any, in, among other assets, 25 shares of the 500 shares for which certificate was made out to plaintiff's wife in 1935, and 25 shares of the 102 shares for which certificate was made out to plaintiff's wife in 1938. The deed of trust recited plaintiff's view that he did not then own the stock covered by the trust as it had been his intention to make a gift of the stock to his wife in 1935 and 1938 and that the Bureau of Internal Revenue, for income tax purposes, had taken the position that title to the stock remained in plaintiff. The First National Bank of Atlanta accepted the appointment as trustee on June 13, 1945, after having been advised by its counsel of the decision of the Tax Court as to ownership and that neither plaintiff's wife nor the corporation would relinquish the stock without a contest. The main purpose of plaintiff in conveying the stock in trust was to obtain an adjudication in the state courts of the ownership of the stock.

13. On June 23, 1945, the First National Bank of Atlanta as trustee under the trust agreement dated June 9, 1945, filed suit in the Haralson Superior Court against the Sewell Manufacturing Company and plaintiff's wife, Mrs. Mary W. Sewell, being action No. 3064 in that court. The trustee asserted that by reason of the transfer under the trust agreement of June 9, 1945, it had derived a good title to each of the 25-share lots referred to above and that the defendant, the Sewell Manufacturing Company, wrongfully declined on demand to issue new stock certificates to the bank covering these two 25-share lots. The defendants in that suit defended on the ground that the shares involved were the sole property of Mrs. Mary W. Sewell by reason of valid and completed gift made by the plaintiff to her in 1935 and in 1938.

14. On June 26, 1945, plaintiff's wife brought suit in the Circuit Court of Haralson County, Georgia, against the Sewell Manufacturing Company and plaintiff, being action No. 3069 in that court under the Declaratory Judgment Act of Georgia which had been enacted February 12, 1945, Laws 1945, p. 137, to determine the ownership of 475 shares out of the lot of 500 shares above referred to, and the ownership of 77 shares out of the lot of 102 shares above referred to.

15. State action No. 3064, the suit by the trustee against the Sewell Manufacturing Company and plaintiff's wife, was brought to trial before a jury, commencing on July 18 and concluding on July 19, 1945. All parties were represented by counsel. The trustee was represented by an Atlanta law firm which was the bank's general counsel, and substantially the same evidence was introduced on behalf of the plaintiff and the defendant that had been introduced in the trial of the case before the Tax Court. The presentation of the evidence in the state court was not less able or less vigorous than the presentation on behalf of the Commissioner of Internal Revenue in the Tax Court. The presiding judge charged the jury that it must determine whether or not the gifts relied upon by the defendants were valid and that it should return a verdict for

the defendants if it determined that Roy B. Sewell made a valid gift to his wife of the stock in 1935 and in 1938, but that it should return a verdict for the plaintiff if it determined that Roy B. Sewell did not make valid gifts of his stock in 1935 and 1938. The jury was instructed that the issues were separate and that it could find one gift valid and the other invalid. A copy of the charge to the jury is in evidence as Exhibit I to the Agreed Statement of Facts and is made a part hereof by reference. The verdict of the jury was returned on July 19, 1945, in favor of the Sewell Manufacturing Company and Mrs. Mary W. Sewell, the defendants, on both issues, and judgment accordingly was entered on July 19, 1945. Time for motion for a new trial or for taking of appeal has expired without any such motion being made or appeal taken.

16. State action No. 3069, the action by plaintiff's wife against the Sewell Manufacturing Company and the plaintiff, was submitted on July 19, 1945, to the presiding judge, who presided in the suit referred to above. The action was submitted to the judge, after a waiver of a jury trial, on the complete printed record in the appeal pending before the United States Circuit Court of Appeals for the Fifth Circuit from the decision of the Tax Court, transcript of all the oral testimony given in the Tax Court cases, all the documentary evidence introduced in the Tax Court cases, the briefs, reply briefs or supplemental briefs filed by the parties in the Tax Court and the oral testimony and documentary evidence introduced in action No. 3064 which had been tried that day and the previous day before the same judge. The action was submitted to the court without argument with a request by the parties that the court make an independent determination of the question of the validity of the gifts in 1935 and 1938. The court took the case under advisement and on August 2 judgment was entered for Mrs. Mary W. Sewell and against the defendants, the Sewell Manufacturing Company and Roy B. Sewell, the plaintiff herein. Judgment of the court was as follows:

#### "JUDGMENT

The within case, filed under the Declaratory Judgment Act of 1945, having been

heard by me without a jury, the parties hereto having consented to the trial of this case at this, the appearance term, and having waived the right of trial by jury, and having consented to the trial of the case before me without a jury.

It is hereby ORDERED, ADJUDGED AND DECREED (1) that in the year 1935 a legally valid and completed gift without any restriction, condition or reservation was made by the defendant, Roy B. Sewell, to the plaintiff, Mrs. Mary W. Sewell, of 500 shares of stock of the Sewell Manufacturing Company, a Georgia corporation, represented by Certificate No. 56, on the stock records of the Sewell Manufacturing Company, said 500 shares embracing the 475 shares in controversy in this suit; (2) that since 1935 the defendant, Roy B. Sewell, has had no right, title or interest in or to any part of said 475 shares of stock here in controversy; and (3) that said 475 shares of stock here in controversy are the property of the plaintiff, Mrs. Mary W. Sewell; and

It is hereby FURTHER ORDERED, ADJUDGED AND DECREED (1) that in the year 1938 a legally valid and completed gift without any restriction, condition or reservation was made by the defendant, Roy B. Sewell, to the plaintiff, Mrs. Mary W. Sewell, of 102 shares of stock of the Sewell Manufacturing Company, a Georgia corporation, represented by Certificate No. 98 on the stock records of the Sewell Manufacturing Company, said 102 shares embracing the 77 shares in controversy in this suit; (2) that since 1938 the defendant, Roy B. Sewell, has had no right, title or interest in or to any part of said 77 shares of stock here in controversy; and (3) that said 77 shares of stock here in controversy are the property of the plaintiff, Mrs. Mary W. Sewell.

In open Court, this 2nd day of August 1945.

WM. W. MUNDY,
*Judge, Superior Court,*
*Tallapoosa Circuit."*

Time for motion for a new trial and for the taking of an appeal has expired without such motion being made or appeal taken.

17. On August 17, 1945, and before argument on the appeal from the decision of

the Tax Court, the plaintiff filed a motion in the United States Circuit Court of Appeals for the Fifth Circuit, asking to have the case remanded to the Tax Court for the purpose of permitting introduction in that court of the judgments of the Superior Court of Haralson County, Georgia, in State Court actions No. 3064 and 3069. The motion was denied and the judgment of the Tax Court was affirmed November 9, 1945 (Sewell v. Commissioner of Internal Revenue, 5 Cir., 151 F.2d 765). Application for certiorari was filed with the United States Supreme Court and denied on February 25, 1946 (327 U.S. 783, 66 S.Ct. 683, 90 L.Ed. 1010).

18. The Commissioner of the Department of Revenue of the State of Georgia advised the plaintiff in a "30-day notice" dated September 11, 1945, sent by registered mail as required by the provisions of section 92-3302 of the Georgia Code, of a determination of income tax deficiencies for the years 1938, 1939, 1940, and 1941, based in part upon the inclusion in the plaintiff's income of the same dividends the taxation of which is in dispute in the present action. The Georgia Revenue Commissioner, after protest by plaintiff based on the State Court judgments above referred to, eliminated the dividends from plaintiff's income, and on April 4, 1946, issued a revised determination accordingly.

Before JONES, Chief Justice, and MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Chief Justice.

After the plaintiff filed his income tax returns for the years 1938, 1939, 1940, and 1941 and paid the taxes shown thereon, the Commission of Internal Revenue levied an additional assessment by including therein the dividends paid on 558 shares of the stock of the Sewell Manufacturing Company and by including the dividends on an additional 102 shares for 1939, 1940, and 1941. Plaintiff paid this additional assessment and seeks a refund on the ground that this particular stock had been given to his wife, Mary W. Sewell, in 1935, 1936, and 1938.

In 1909 plaintiff and two brothers organized a partnership to engage in business as manufacturers of clothing. The business was incorporated in 1931 under the laws of the state of Georgia, as the Sewell Manufacturing Company, and plaintiff was elected a member of the board of directors. The three brothers and members of their families, with A. R. Lovvorn, a relative of plaintiff's wife, have been the principal stockholders since the time of its incorporation.

Early in 1934 the three brothers discussed among themselves the idea of giving some of their stock to their wives. The other two brothers caused the transfers of a portion of their stock to be made to their wives at the time of the discussion. Plaintiff did not make the transfer at that time, but in December 1934 he endorsed in blank the certificates covering 500 shares of his stock and on June 1, 1935, after dividends had been declared between January 1, 1935 and June 1, 1935, and credited to his account, plaintiff directed the transfer on the records of the company of 500 shares of his stock to his wife as of January 1, 1935 and at the time directed a correction of the crediting of the dividends for that year so that they would be placed to her credit. The 500 shares in his name were cancelled and a similar number made out in the name of Mary W. Sewell. The certificate, however, remained in the stock certificate book until 1946, but in July or August 1935 plaintiff's wife endorsed the certificate in blank. In the year 1936, 58 additional shares of stock were paid for out of the proceeds of the dividends previously declared on the 500 shares of stock and it is agreed that these 58 shares shall be treated the same as the original issue to Mrs. Sewell. Plaintiff caused an additional 102 shares to be transferred on the records to his wife before the end of the year 1938 and a certificate for these shares was issued in her name, dated December 28, 1938 and in like manner remained in the stock certificate book until August 1946.

The internal affairs of the Sewell Manufacturing Company were handled informally and the wives never received notice of stockholders' meetings, nor did they attend such meetings, nor did they issue proxies for their stock. Dividends were not paid by check but the amounts were credited to the various stockholders of record on the books

of the company. Transfers by way of loans were made from time to time from the account of one stockholder to another, even in the absence of the particular stockholder from whose account the funds were being transferred. This was done under the direction of the secretary, and the practice was known to all the stockholders. Usually in such cases notes were prepared to be signed by the stockholder to whom the stock was transferred, but the practice was not always followed.

Plaintiff's wife agreed that he might use any amount standing to her credit on the books of the corporation at any time he needed it. Amounts standing to her account were occasionally transferred to his account and at times the entire amount of her account was so transferred.

Notes as evidence of the indebtedness were sometimes though not always executed by plaintiff. On April 1, 1935 plaintiff filed a credit statement with the First National Bank of Atlanta, Georgia, including among his assets the 500 shares heretofore referred to. He made similar statements in 1936 and 1937, in which the 500 shares were not included in his assets. The 1937 statement contained the following coment: "558 shares of Sewell Manufacturing Company common stock owned by my wife and controlled by me are not included."

Plaintiff's wife, Mary W. Sewell, reported as her own income the amounts credited to her own account as dividends during the years 1935 to 1941, inclusive. The Commissioner of Internal Revenue excluded these amounts from the wife's income and her taxes were adjusted accordingly. Plaintiff's counsel has stipulated that proper adjustment of the wife's liability for taxes on the income involved will be made if it be held that the dividends are not taxable as plaintiff's income.

In 1939 Mrs. Sewell's account with the Sewell Manufacturing Company was charged amounts totaling $7,135 which was paid in connection with a home being built on a lot belonging to her. In 1940 and 1941 there were transfers of $9,850 and $7,850, respectively, to Mrs. Sewell's bank from her account with the Sewell Manufacturing Company, which she used for household and personal expenses, contributions, house and grounds, insurance policies, care of mother, and property taxes.

Prior to 1939 expenditures of the character listed were generally paid by Roy B. Sewell, the plaintiff. Most of the insurance policies referred to were on plaintiff's life, with about one out of four or five being on the life of Mrs. Sewell.

For the years 1935, 1936 and 1937 plaintiff had filed returns and paid income taxes and had not included in his returns the dividends on the 500 shares of stock. The Commissioner of Internal Revenue included the dividends in plaintiff's income and made a deficiency assessment. The resulting deficiencies were appealed by plaintiff to the Tax Court. These appeals were consolidated with similar appeals by the brothers when they reached the Tax Court for trial. On February 7, 1944, the Tax Court decided this appeal adversely, including in its findings of ultimate facts the following: "None of the stock transfers in question were intended by the Sewell brothers to vest dominion and control over the shares of stock transferred in their respective wives. It was their intention to retain, and they did retain, that control and dominion in themselves. Each of the wives knew such intention existed, and each impliedly agreed that her husband retain control over the stock in her name. Completed gifts of the stock certificates so transferred were not made."

On January 9, 1945 plaintiff filed his petition with the Circuit Court of Appeals for the Fifth Circuit, seeking a review of the Tax Court's decision. On account of subsequent orders, however, the record did not reach the Circuit Court of Appeals until June 1, 1945.

On June 9, 1945, plaintiff executed a trust instrument by the terms of which he conveyed to the First National Bank of Atlanta, Georgia, for the benefit of plaintiff's mother and others, all his right, title and interest, if any, in 25 shares of the 500 shares for which certificate was made out to plaintiff's wife in 1935, and 25 shares covered by the certificate which was made out to plaintiff's wife in 1938. The deed of trust recited as plaintiff's view that he did not own the stock covered by the trust, as it had been his intention to make the gift of the stock to his wife in 1935 and 1938

but that the Bureau of Internal Revenue for income tax purposes had taken the position that title to the stock remained in him. On June 13, 1945 the First National Bank of Atlanta accepted the appointment as trustee, after having been advised by its counsel of the decision of the Tax Court as to ownership, and the fact that neither plaintiff's wife nor the corporation would relinquish the stock without a contest. The chief purpose of plaintiff in conveying the stock in trust was to obtain an adjudication in the state court of the ownership of the stock.

On June 23, 1945, the First National Bank of Atlanta as trustee filed suit in the state court against the Sewell Manufacturing Company and plaintiff's wife, Mrs. Mary W. Sewell, asserting that the company wrongfully declined on demand to issue any stock certificates to the bank covering these two lots of 25 shares each. The defendants asserted that the shares involved were the sole property of Mrs. Mary W. Sewell by reason of valid and completed gifts theretofore made by the plaintiff.

On June 26, 1945, plaintiff's wife brought suit in the circuit court of the same county in Georgia against the Sewell Manufacturing Company and plaintiff under the Declaratory Judgment Act of Georgia which had been enacted February 12, 1945, to determine the ownership of the remaining shares standing in her name which had not been covered by the deed of trust.

The first of these suits, by the trustee against the Sewell Manufacturing Company and plaintiff's wife, was tried before a jury on July 18 and concluded on July 19, 1945, all parties being represented by counsel. Substantially the same evidence was introduced on behalf of the plaintiff and the defendant that had been introduced in the trial of the case before the Tax Court. The presentation of the evidence in the state court by the bank's counsel was not less able or less vigorous than the presentation by the Commissioner of Internal Revenue in the Tax Court. In charging the jury the presiding judge instructed it to determine whether or not the gifts relied upon by the defendant were valid and that if it de-

termined that such gifts were valid it should return a verdict for the defendant, but that if it determined that Roy B. Sewell did not make valid gifts of his stock in 1935 and 1938 a verdict should be rendered for the plaintiff. The jury was instructed that the issues were separate and that it could find one gift valid and the other invalid. The verdict of the jury was returned on July 19, 1945 in favor of the Sewell Manufacturing Company and Mrs. Mary W. Sewell, defendants, on both issues, and judgment was entered accordingly. No appeal was taken.

The second action, being by plaintiff's wife against the Sewell Manufacturing Company and the plaintiff, was submitted on July 19, 1945, to the judge who had presided in the suit referred to above. It was submitted on the complete printed record in the appeal pending before the United States Circuit Court of Appeals for the Fifth Circuit from the decision of the Tax Court and included a transcript of all the oral testimony given in the Tax Court cases, as well as the documentary evidence introduced in those cases and the briefs that had been filed by the respective parties in the Tax Court, as well as the oral and documentary evidence that had been introduced in the case which the presiding judge had just conducted.

The court took the case under advisement and on August 2 rendered a declaratory judgment that in the year 1935 a legally valid and completed gift without any restriction, condition or reservation had been made by the plaintiff, Roy B. Sewell, to his wife, Mrs. Mary W. Sewell, of 500 shares of stock of the Sewell Manufacturing Company, and that since 1935 Roy B. Sewell had had no right, title or interest in any part of said stock. A similar order was entered as to the remaining shares involved in the second gift. No appeal was taken from this judgment.

On August 17, 1945, and before argument on the appeal from the decision of the Tax Court, the plaintiff filed a motion in the United States Circuit Court of Appeals for the Fifth Circuit asking that the case pending in that court be remanded to the Tax Court for the purpose of per-

mitting introduction in the Tax Court of the two judgments above referred to. The motion was denied and the judgment of the Tax Court was affirmed November 9, 1945, Sewell v. Commissioner of Internal Revenue, 5 Cir., 151 F.2d 765. In passing on the motion to remand the Circuit Court of Appeals used the following language:

"The question involved here is one of intent, that is, whether or not the petitioners intended to make a completed gift inter vivos of the corporate stock to their respective wifes, or whether the stock was placed in their wives' names only for tax purposes with the alleged donors retaining the same dominion and control as if there had been no transfer. There are ample facts in the record to justify the factual finding by the Tax Court that the donors merely intended to accomplish the latter purpose. * * *

"A decision of the state court is binding between the parties in the settlement of their legal rights inter sese, but the income tax consequences of such transactions are for the Tax Court. Estoppel, laches acceptance of benefits, rights of third parties, are incidents that might affect the decisions of the state courts in a contest between the parties, which would have no bearing in a controversy between the parties and the United States over income taxes imposed by virtue of a Federal Statute."

While there are some difficulties due to the state court's decision, we cannot escape the conclusion that for the years in which these taxes were levied the Commissioner had every reason for assessing the additional taxes against the plaintiff. Section 22 of the Revenue Act of 1938, c. 289, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Code, § 22, is very broad in its general definition of what constitutes income.

At the time the Commissioner of Internal Revenue made the additional levies, the stock in question had remained in the corporation's stock records book in the vault in the corporation's office. At no time after the first stock was placed in Mrs. Sewell's name did she receive any notice of or attend any stockholders' meeting, nor send in any proxies or take any part whatever in the business of the corporation. The husband continued to manage all affairs as previously, and he manifestly had control of the dividends and the right to use them any time he saw fit. Prior to 1939 from time to time the full balances shown in Mrs. Sewell's account on the corporation's books were set over to plaintiff for his use. Beginning in 1939 these amounts were not thus transferred, but the sums were used for the paying of expenses that had theretofore usually been paid by the plaintiff. It is difficult to escape the conclusion that he had full charge and control of the stock and might have disposed of it during that period in any way he saw fit.

It was a close family corporation. The issuance of stock and the endorsement of it and permitting it to remain on the books of the corporation gave him a free hand in handling it. It is necessary to look behind the mechanics of these transactions to determine the real ownership. The decisions of the state court in 1945 undertook by decree to make fixed over a ten-year previous period a status that had been fluid during the entire time. During the years in controversy the apparent ownership of these shares could be moved around like the sun and moon in a theater and made to shine from any angle to suit the whims of the stage director or the pleasure of the audience.

This seems to have been the status of affairs during the tax years involved and up to the time of the decision by the state court. After the decision by the state court, the shares of stock were taken from the stock certificate book and physically delivered to Mrs. Sewell in the summer of 1945. When this decision was rendered and the stock certificates were actually delivered it could be argued much more persuasively that she then had control and plaintiff no longer had control of the shares of stock, but in all the circumstances of this case we are unwilling to give the decision of the state court a retroactive application to the extent of determining the validity of Federal income taxes collected during the years involved. Up to that time the Commissioner of Internal Revenue had every right to treat the dividends as within the control and dominion of the plaintiff. This conclusion is further bulwarked

by the fact that exactly the same question was presented before the Tax Court, with the exception of the judgment of the state court, which had not then been rendered, and was presented to the Circuit Court of Appeals, which decided that the judgment of the state court was not binding for the years 1935, 1936 and 1937. On further appeal the Supreme Court denied an application for certiorari. In the light of this decision it would make a manifest conflict to hold that in an exactly similar situation the divdends for 1938, 1939, 1940 and 1941 should not be included in the income of plaintiff as they had been included in his income for 1935, 1936 and 1937.

The plaintiff cites a number of cases, including Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Sharp v. Commissioner, 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087; Masterson v. Commissioner, 5 Cir., 141 F.2d 391.

The Blair case, supra, is somewhat similar and tends to support the position taken by the plaintiff in the case at bar. However, that case turned largely upon whether a testamentary trust was a spendthrift trust that barred the voluntary alienation of the interest of the beneficiary under the laws of the state in which the donor resided. The decision by an Illinois court upholding the right of the life beneficiary of the trust to assign parts of his interest was held conclusive as to the validity of the assignment. In the opinion the court, at page 12, of 300 U.S., at page 333 of 57 S.Ct., 81 L.Ed. 465, stated:

"There is here no question of evasion or of giving effect to statutory provisions designed to forestall evasion; *or of the taxpayer's retention of control.*" [Italics supplied.]

In the Freuler case a fiduciary of a trust estate omitted to make proper deductions for depreciation and thus overstated the net income of the estate and overpaid the beneficiary. The excess thus received by the latter was held no part of the income and should not have been included in his return. A state court decision construing the statute respecting distribution of trust estates in California was held binding. Apparently this state decision was in effect at the time of the assessment.

The Sharp case was also an estate case and merely followed the decisions in the Blair and Freuler cases.

The Masterson case presented a somewhat similar though not identical question. At any rate, it was decided by the same Circuit Court of Appeals which later decided the case of the plaintiff for the 1935, 1936 and 1937 taxes.

Most of the cases cited by the plaintiff involve either the legal rights of beneficiaries of trusts where state courts had previously determined those rights under the trust instrument, or an estate tax controversy in which a state court had previously determined ownership of the property involved.

In some circumstances a state decision determining ownership and control would have the effect also of determining whether income taxes on a particular transaction should be collected from one person or from another.

There are other factual situations in which the decision of a state court settling the question of ownership and control as between the parties themselves might still not settle the basis of Federal income taxes.

In Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 536, 90 L.Ed. 670, 164 A.L.R. 1135, there was a gift of stock by Tower to his wife and a subsequent dissolution of the corporation. A partnership was created in which the wife became a limited partner, contributing the value of the donated stock. The question was the taxability to the husband of that portion of the income which derived from the wife's contribution to the partnership assets. It was contended on behalf of the husband that the arrangement constituted a partnership under state law and hence it should be held that there was a valid partnership for tax purposes. In sustaining the Commissioner's action in taxing the husband on the income, the Supreme Court said: "But the Tax Court in making a final authoritative

finding on the question whether this was a real partnership is not governed by how Michigan law might treat the same circumstances for purposes of state law. Thus, Michigan could and might decide that the stock-transfer here was sufficient under state law to pass title to the wife, so that in the event of her death it would pass to whatever members of her family would be entitled to receive it under Michigan's law of descent and distribution. But Michigan cannot, by its decisions and laws governing questions over which it has final say, also decide issues of federal tax law and thus hamper the effective enforcement of a valid federal tax levied against earned income."

It is true that in that case there was a holding by the Tax Court that the arrangement was for the express purpose of reducing taxes. However, on this point the Supreme Court said that such a showing "simply lends further support to the inference that the husband still controls the income from his partnership interest, that no partnership really exists and that earnings are really his and are therefore taxable to him and not to his wife. * * * To rule otherwise would mean ordering the Tax Court to shut its eyes to the realities of tax avoidance schemes."

The cases cited by both plaintiff and defendant frequently turn on the facts and circumstances that were presented in the particular case.

The case of Doll v. Commissioner, 8 Cir., 149 F.2d 239, certiorari denied, 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430, involved a situation where the plaintiff had given his wife a half interest in his business and thereafter drew up written articles of partnership with her. Later, on petition by the wife, the Circuit Court of St. Louis County, Missouri, entered a declaratory judgment construing her rights under the partnership agreement and her interests in the partnership assets and business, holding the agreement valid. In rejecting the controlling effect of the state decision the United States Circuit Court of Appeals used the following language in respect to federal income tax laws: "Congress may choose its own criteria and make or not make state law control the application of its acts."

The court upheld the Commissioner's assessment of the entire partnership income against the husband.

In Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439, the court said: "Liability may rest upon the enjoyment by the taxpayer of privileges and benefits so substantial and important as to make it reasonable and just to deal with him as if he were the owner, and to tax him on that basis."

In Commissioner v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89, L. Ed. 981, the court used the following language: "To permit the true nature of a transaction to 'be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

To the same effect is the recent case of Guinness v. United States, Ct. Cl., 73 F. Supp. 119.

■ We think that a state court decision that title is in the wife is not necessarily determinative of the federal tax question involved in taxing the income. It is rather well settled by many decisions that under section 22(a), 26 U.S.C.A. Int.Rev. Code, a person may be taxed on profits earned from property which he neither owns nor controls and under some circumstances on income which he neither owns nor controls. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; United States v. Joliet & Chicago R. R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658.

There is a class of cases involving transactions between or among members of one family in which the transactions are viewed for income tax purposes not in light of the technical considerations of legal ownership, but rather with a special scrutiny of the arrangements and devices which, though valid under state law, might be utilized to the detriment of the revenue. Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Harrison v. Schaffner, 312 U.

S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; and Commissioner v. Tower, supra.

The circumstances surrounding the transactions in the instant case are such as to lead us to conclude, as they did the Commissioner, that for federal tax purposes the dividends should be treated as income of the husband. The fact that the donee was the wife of the donor, that the wife in no way contributed to the business success, that the stock was readily available for credit purposes, that the dividends were available for the use of the husband, and the wife used part of the dividends to pay expenses of the family previously paid by the husband, and that about the only act of consequence which was consistent with title in the wife was the inclusion of the amount of the dividends in the wife's income tax return, bring this case within the class of "family group" cases of which Commissioner v. Tower, supra, is typical. In the Tower case the stock given to the wife was converted into an interest in a partnership which produced the income subjected to the tax. In this case the stock given to the wife produced the income.

In this free atmosphere of exchange and transfers it is difficult for this court to determine the motives that actuated those who were involved in the various transactions, but it seems to us that it would have been just as difficult for the state court to isolate and identify such motives. However effective the decision of the state court may have been, after that decision was rendered, in determining the title to and control of the property as between the parties involved in that litigation, we do not feel that it should govern for Federal income tax purposes the peculiar set of circumstances that prevailed during the intervening years prior to that decision when these taxes were involved. The law is concerned with the substance of things rather than mere forms. The tagging and naming of a thing does not alter its character.

We find that plaintiff, in the peculiar circumstances of this case, should not recover the additional taxes that were collected for the years 1938, 1939, 1940, and 1941, and the petition will be dismissed.

It is so ordered.