UNITED STATES v. HORSCHEL.
No. 13189.

United States Court of Appeals
Ninth Circuit.
June 15, 1953.

Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson, John J. Kelley, Jr., Howard Locke, Sp. Assts. to the Atty. Gen., Harvey Erickson, U. S. Atty., Spokane, Wash., and Lloyd L. Wiehl, Asst. U. S. Atty., Yakima, Wash., for appellant.

Harry L. Olson, Fred C. Palmer, John Wm. McArdle, Yakima, Wash., for appellee.

Before ORR, Circuit Judge, and LING and BYRNE, District Judges.

BYRNE, District Judge.

The sole question presented on this appeal is whether part of the distribution of assets made by a corporation upon its liquidation constituted an assignment of anticipated income taxable to it.

The Selah State Bank conducted banking operations in Selah, Washington, and in 1920 the shareholders of the bank organized the Selah Securities Company as an adjunct to the banking business, primarily for the purpose of acquiring and holding certain types of collateral security which could not be held by the bank. The 300 shares of capital stock were held by the same persons who held the stock of the bank, and in the same proportions. The Selah Securities Company (hereinafter referred to as the corporation) kept its books and reported its income on a *calendar year* and a *cash basis*. The Commissioner has never, and does not now contest this method.

Upon the advice of the corporation's accountant that the advantages of continued existence were outweighed by the disadvantages from a tax vista, a special meeting of the shareholders was called on December 28, 1943, at which time a resolution was adopted providing for liquidation, and Elmer Dahlin was appointed trustee for the purpose of conducting and winding up the affairs of the corporation. Subsequently, during the year 1943, the assets were distributed to the shareholders in their proportionate stock interests.

In the trial court the government questioned the effective dissolution of the corporation. The trial judge found that the corporation was effectively dissolved and the conveyance of assets to the stockholders completed in 1943. The appellant has abandoned this argument on appeal.

There was a variety of assets distributed, but issues are raised as to only four items, the distribution of which the United States claims amounted to an anticipatory assignment of income: (1) apples in a warehouse "pool", (2) interest due but unpaid in 1943 on notes receivable of questionable value, (3) certain supplies with

a basis of zero and (4) a warehouse credit for fruit sold in 1943. The appellee claims that there was no issue in the trial court as to the last named item, the warehouse credit, and there should be no issue here on appeal. It appears that the warehouse credit did constitute income in 1943 to the corporation which it failed to return, but that a previous deficiency assessment was made by the Commissioner and paid by the corporation. Nowhere in the notice of deficiency or "90 day letter" which fathered this present suit is there any indication that deficiency is being asserted because of this warehouse credit. Nor does the complaint raise any issue as to it. Thus it appears that the government is confused in raising an issue as to this item upon which the tax has been paid and no refund sought.

It is the position of the government that $12,331.71 received by the transferee shareholders for apples placed in a commercial warehouse in 1943 under a pooling arrangement, interest of $1,385.58 on promissory notes distributed to the shareholders and $533.70 received from the sale of supplies having a zero basis, all were income *already earned* by the corporation but not reduced to possession at the time of its dissolution and are therefore taxable to the corporation in 1944 when received. The government seeks to collect from the appellee as a transferee of the corporation.

The notes which gave rise to the interest item were in default when distributed and the amount eventually collected by the distributees was less than the principal amount of the notes. The supplies were disposed of for cash more than four months after the corporation was out of existence. The apples had been packed and placed in a warehouse pool and were sold for cash from time to time during the eleven months following dissolution. These apples could no more be considered cash at the time of dissolution than could the ranch which produced them. Both were eventually disposed of for cash after they had been distributed to the shareholders.

It is not unusual that property distributed to shareholders in complete liquidation is later sold by the shareholders at a gain, but that fact alone does not require the gain to be taxed to the corporation, either as a capital gain or as ordinary income.[1] It is obvious that the disputed items were not the same as cash to this cash basis corporation and thus were not income before its dissolution unless some other principle makes them so.

The government relies on the doctrine of anticipatory assignment of income expounded by the Supreme Court in Lucas v. Earl, 1929, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, and U. S. v. Joliet and Chicago R. Co., 1942, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658. The teaching of the cited cases was not based on the theory that the income was "already earned" at the time of assignment, but on the hypothesis that it was *anticipated, used and realized* before it was earned. The taxpayers were charged with the income because they retained the control of the property or agency by which it was earned and diverted the payments to others as a means of procuring the satisfaction of their own wants. Thus they obtained the economic benefit which was tantamount to realization of the income.

An effort to anticipatorily assign future earnings was stricken down by the court in Lucas v. Earl, supra, where a husband attempted by a continuing assignment, to vest title to a portion of his earnings in his wife. The court said, the fruit is not to be "attributed to a different tree" from that on which it grew. The husband "realized" the income because he retained the agency by which it was earned and controlled its disposition.

The holding in Helvering v. Horst, supra [311 U.S. 112, 61 S.Ct. 147], was that when one who is the owner of a negotiable bond and of the investment which it represents makes a gift of the interest coupons, he has separated his right to interest pay-

---

1. U. S. v. Cumberland Public Service Co., 1950, 338 U.S. 451, 70 S.Ct. 280, 94 L. Ed. 251; Wurtsbaugh v. Commissioner, 5 Cir., 1951, 187 F.2d 975; Howell Turpentine Co. v. Commissioner, 5 Cir., 1947, 162 F.2d 319, 324.

ments from his investment, procured the payment of the interest to his donee and received the full enjoyment of the economic benefits of the income. The court pointed out that "income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants." The court made no distinction between the portion of the interest accrued prior to the assignment and that accrued subsequent to the assignment. The doctrine applies to unearned income when the donor retains the agency which earns it.

In United States v. Joliet & Chicago Railroad Co., supra [315 U.S. 44, 62 S.Ct. 445], Joliet had paid an annual $7.00 dividend to its shareholders every year from 1864 until 1931 when it leased all of its railroad property to Chicago and Alton Railroad Co. in perpetuity. Chicago covenanted, *inter alia*, to continue dividend payments to Joliet's shareholders. The Supreme Court stated, "The umbilical cord between [Joliet] and its shareholders has not been cut. The distribution made is in performance of the obligation owed by [Joliet] to them." Since the dividend payments were made to Joliet's shareholders in performance of its obligation to them, Joliet received the enjoyment of the economic benefit of the income and it was income "realized" by it.

█ The principle of anticipatory assignment of income is not applicable in this case. Here the "umbilical cord" has been completely severed. This cash basis corporation was dissolved and all of its assets distributed in 1943. The result was that in 1944 when the income was received, the corporation was not in existence and the income was properly reported by the owners of the property that earned it, viz. the distributee shareholders. See Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

Where a dissolved corporation has distributed accrued items of income to the shareholders, it may result in a tax liability to the dissolved corporation such as existed in Jud Plumbing & Heating, Inc. v. Commissioner, 5 Cir., 1946, 153 F.2d 681, but the theory of liability in such cases is not based on the doctrine of anticipatory assignment of income as pronounced in the Horst and Joliet cases.

In the Jud Plumbing case a dissolved corporation distributed all of its assets to its chief shareholder. The corporation had been using the completed contract method of accounting for income tax purposes. At the time of dissolution it distributed partially completed contracts including progress payments it had received as the work went forward. The Commissioner accrued the earnings on the contracts up to the date of dissolution and levied a deficiency against the corporation. The portion of the income allocated to the period subsequent to dissolution was properly reported in the individual return of the shareholder to whom the contracts were distributed. The question before the court was whether the Commissioner used an erroneous method of accounting under Sections 41, 42 and 45, Internal Revenue Code, 26 U.S.C.A. §§ 41, 42 and 45, in reallocating income for the year of dissolution between the corporation and its successor, based upon the relative percentages that the cost paid by each bore to the profit from the completed contracts. The decision in the case did not rest on the anticipatory assignment of income doctrine. That principle might have been applicable if the corporation had remained in existence, retained the contracts and assigned the income to the shareholders. Had that occurred, the corporation would be liable, not only for the portion of the income accrued prior to the assignment, but for all of it, as was the assignor in the Joliet case. However, the corporation parted with the property which earned the income, and the portion of the income which accrued subsequent to the assignment was properly reported in the return of the individual distributee.

The government has cited the Jud Plumbing case in support of its theory of anticipatory assignment of income. As we have seen, the case is not in point. Had the Commissioner sought to recover taxes under the theory of the Jud Plumbing case, he would have levied a deficiency assess-

ment based on the portion of accrued income allocated to the period prior to dissolution as was done in that case. That he did not do. We of course are not saying that he properly could have done so with this cash basis taxpayer.

United States v. Lynch, 9 Cir., 1951, 192 F.2d 718, cited by the government is not in point. That case involved an attempt by a "going concern" to distribute the profit from the sale of apples to its shareholders as a dividend in kind. We held that the profit was income to the corporation from the sale of its inventory in the normal course of business. That is not the situation here.

Affirmed.