OPINION. Rice, Judge: The substance of the respondent’s determination of deficiencies here is that Terneen was a “collapsible corporation” as that term is known in the law of Federal taxation. Had Terneen’s shareholders realized the gains in question on or after January 1,1950, the taxability of such gains as ordinary income or as capital gains would be determined pursuant to specific statutory standards. By section 212 of the Eevenue Act of 1950,[3] Congress added section 117 (m) to the 1939 Code. In such section, Congress provided that the gain from the sale or exchange of stock of a collapsible corporation should be taxed as ordinary income. It defined a collapsible corporation as a corporation formed for the production of property, with a view to the sale or exchange of its stock by its shareholders, in liquidation or otherwise, prior to the realization by the corporation of a substantial part of the net income which would be derived from its production of property. We, of course, do not decide whether the gains here in question, had they been realized after January 1, 1950, would be taxable as ordinary income under the provisions of section 117 (m). The reports of the House Ways and Means Committee[4] and the Senate Finance Committee[5] indicate that Congress was fully aware that so-called collapsible corporations were in widespread use in the motion picture industry. Congress further recognized that no such corporation had, at that time, been before the courts. Hence, section 212 (b) of the 1950 Act provided that the courts were free to decide, with no inference being drawn from the enactment of such subsection, whether the gains arising from the sale or exchange of stock of an alleged collapsible corporation prior to January 1,1950, were taxable as ordinary income or as capital gains. A case with facts almost identical to those here was decided by the United States District Court for the Southern District of California— Herbert v. Riddell, 103 F. Supp. 369 (S. D., Cal., 1952). In that case, the Government argued that the gains realized by the stockholders of an alleged collapsible corporation, after its dissolution and assignment of its assets to them, were taxable as ordinary income on the same theories the respondent advanced here. The District Court rejected the Government’s arguments and held that the gains there in question were taxable as capital gains. The petitioners here, of course, rely on that case. We think that conclusion was correct. The respondent’s determination of the deficiencies here is predicated on what he believes to be strong equitable considerations in his favor. While solicitude for the revenue may sometimes be an appealing basis on which to decide a particular tax case, it is often a treacherous one. And here, irrespective of what equitable arguments might be advanced in support of the respondent’s position, we think it clear that his determination has no support in law. The deficiencies in Docket Nos. 46372, 46373, 46375, 46376, and 46379 were determined on the theory that Terneen was not a bona fide corporation for Federal tax purposes. The respondent, however, did not argue that theory on brief, and we assume he now deems it to be without merit. Nor need we belabor that question. Suffice it to say, that the facts as set forth in our findings show clearly that Terneen was a bona fide corporation until August 1944, when it ceased doing business, liquidated, and commenced dissolution. Cf. Gregory v. Helvering, 293 U. S. 465 (1935); and Higgins v. Smith, 308 U. S. 473. (1940). The respondent’s alternative determination that Terneen did not dissolve for Federal tax purposes in 1944 is based on two arguments. His first argument is predicated on the holdings of such cases as: United States v. Joliet & Chicago R. Co., 315 U. S. 44 (1942); Helvering v. Horst, 311 U. S. 112 (1940); Helvering v. Eubank, 311 U. S. 122 (1940); and Lucas v. Early 281 U. S. 111 (1930). Those cases, of course, stand for the proposition that the one to whom income is truly attributable cannot escape the tax thereon by anticipatory assignments or other artificial devices which channel the actual receipt of the income directly into the hands of others. The respondent places particular emphasis on the Joliet & Chicago R. Co. case. An examination of the holding therein will serve as well as any other to demonstrate the error of the respondent’s position. In that case, the Joliet & Chicago Railroad Company transferred all of its assets to a second railway company under an agreement whereby the second company agreed to pay Joliet stockholders a dividend. Joliet sought to escape tax liability by arguing that it had ceased doing business and that the dividends received by its stockholders were, in fact, paid by the second railway company and constituted income of the stockholders only. The Supreme Court rejected those arguments and held, that Joliet was first taxable on the total amount of the dividends ultimately paid to its stockholders. The significant distinction between the Joliet & Chicago R. Co. case, as well as the other similar above-cited anticipatory assignment cases, and the case before us here, is that in each of those cases the taxpayer to whom the income was truly attributable was still in existence at the time the income was received by the assignees. Here, Terneen was not in existence when, the income in question arose, the income came from property owned by individuals and Terneen, therefore, cannot be liable for taxes on such income. The second argument which the respondent advances for disregarding Temeen’s corporate dissolution in 1944 is predicated on the basis of the holding of Commissioner v. Court Holding Co., 324 U. S. 331 (1945). In that case, the Supreme Court held that a corporation could not negotiate for the sale of its property and then transfer the property to its stockholders and dissolve; thus permitting them to receive the purchase price for the property and itself escape taxation. The doctrine of the Court Holding Co. case is confined to the facts on which it was decided. United States v. Cumberland Pub. Serv. Co., 338 U. S. 451 (1950). It obviously is not applicable to the facts here because Terneen did not arrange for the sale of anything. It did not pass on to its stockholders, upon its dissolution, a substantially completed contract for the sale of its assets. It assigned to them only its right, title, and interest in the film “Secret Command,” which was subject to the distribution agreement signed more than a year previously with Columbia. While the stockholders expected to realize a profit on the assets transferred to them, there was no assurance that they would do so. Columbia agreed only to distribute the picture; it did not agree to buy it. We think the respondent clearly erred in disregarding Terneen’s liquidation in 1944 and in determining deficiencies in taxes and penalties against it for that and subsequent years, and in determining deficiencies against the individual petitioners here as its transferees. United States v. Horschel, 205 F. 2d 646 (C. A. 9, 1953); Herbert v. Riddell, supra. The third issue is whether the sums which the O’Briens and the Ryans received from Columbia in 1947, which sums were in excess of the fair market value of Terneen’s assets as reported by them in 1944, were taxable as ordinary income or as additional capital gains. On their returns for 1947, they reported such excess as ordinary income; but, upon the respondent’s determination of the deficiencies herein, they claim Such sums should have been reported as additional capital gains. In support of their position they cite Westover v. Smith, 173 F. 2d 90 (C. A. 9, 1949); and Susan J. Carter, 9 T. C. 364 (1947), affd. 170 F. 2d 911 (C. A. 2, 1948). The respondent argues that those cases are distinguishable on their facts from the one here; and, in support of his argument that the excess sums in question here were ordinary income, cites an unreported opinion of the United States District Court for the Southern District of California — Lewin v. Westover, decided October 29, 1953.[6] On facts similar to those here, the District Court there concluded that the taxpayer should have reported similar excess sums as ordinary income. We agree with the respondent that Westover v. Smith, supra; and Susan, J. Carter, supra, are not applicable to the facts here. In those cases, corporate stockholders received contractual obligations having no fair market value upon the dissolution of the corporation. In the Smith case, the contractual obligation was for royalty payments and in the Carter case for oil brokerage commissions. The courts said that collections on those obligations in years after the dissolution of the corporations, constituted capital gains because the dissolution of the corporations was not a closed transaction for tax purposes with respect to assets which had no fair market value on the date of dissolution. Here, the interest in the film which Temeen’s stockholders received had a readily ascertainable fair market value at the time Terneen dissolved. The distribution of the asset was a closed transaction for Federal tax purposes. Hence, the amounts in excess of such fair market value, which the petitioners received in 1947, were properly-reported by them as ordinary income, since their basis in the asset had been recovered by that time. The fourth issue is whether the respondent erred in determining that $40,000 of the sums paid to petitioner, Pat O’Brien, by Columbia in 1945 was additional ordinary community income of the O’Briens in that year on the theory that such amount should have been paid to Pat O’Brien as additional compensation for his performance as the star of “Secret Command.” The respondent argues in support of his determination that O’Brien’s normal salary for starring in a motion picture was $65,000 or more. We think the respondent was clearly in error in his determination. Here, a reasonable salary for O’Brien under the circumstances was agreed upon and there is insufficient reason for regarding a part of the 1945 payments from Columbia as additional salary to O’Brien. See George M. Gross, 23 T. C. 756 (1955). The fifth and final issue is whether the respondent erred in determining that the profit realized by Phil L. Ryan from the sale of one-half of his 10 per cent interest in “Fighting Father Dunn” constituted ordinary income rather than capital gain. We think the respondent’s determination was erroneous. The attorney for RKO, who testified at the hearing, made it very clear that RKO purchased the story by giving Ryan a 10 per cent interest in the net profits of the picture and by employing him as the producer of the picture at a salary of $30,000. RKO paid $50,000 to the author of the story and gave him a 5 per cent interest in the net profits of the film. The respondent argued on brief that the story, or the option thereon, could not be a capital asset in Ryan’s hands since his previous activity in purchasing and selling stories indicated that he was in the business of doing so. That argument misses the point altogether. What Ryan sold in 1947 was not the stoiy but an entirely different asset, namely, one-half of his 10 per cent interest in the net profits of the motion picture. The record as a whole indicates that Ryan was not in the business of buying and selling interests in motion pictures. Hence, his 10 per cent interest in “Fighting Father Dunn” was.a capital asset which he had held for more than six months prior to the time when he sold one-half of it. The profit on such sale was a capital gain. Decisions will be entered wnder Rule 60 64 Stat. 934. H. Rept. No. 2319, 81st Cong., 2d Sess. (1950), p. 56. S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), p. 45. 53-2 U. S. T. C. par. 9619, 45 A. F. T. R. 944.