OPINION. Rice, Judge: We must decide whether a corporation reporting income on an accrual basis, which consistently accrued income from brokerage commissions only after the merchandise had been shipped, is required to report as income for the year in which it was liquidated the amount of $57,172.77, which was received by its sole stockholder as the result of the Corporation’s distribution to him, as a liquidating dividend, of the right to collect commissions on various unshipped orders. The Corporation was engaged in the business of acting as a commission broker for foreign exporters. In 1950, its sole stockholder decided to terminate this business and, in the belief that it would be easier to sell its assets rather than the corporate stock, he caused the Corporation to be liquidated. A formal resolution and a plan of liquidation were adopted by the Corporation on August 29,1950. In accordance with such plan, the Corporation made an initial liquidating distribution of cash, amounting to $6,049.57, on September 1, 1950. On September 15,1950, it distributed to its stockholder all its assets other than cash, retaining its remaining cash in order to satisfy its liabilities. On October 26, 1950, it filed a Certificate of Dissolution with the office of the secretary of state of New York. Further liquidating distributions of cash were made during 1950 and 1951, and it appears that the final cash distribution was made sometime in July 1951. The stockholder continued to operate the business as an individual proprietor from September 1950 until it was sold approximately a year later. Included among the assets which were distributed by the Corporation on September 15,1950, as a liquidating dividend, was the right to collect various brokerage commissions on orders which it had secured for its foreign exporters. Certain of such commissions, aggregating $27,042.38, were due on merchandise shipped prior to September 15, 1950, and the balance related to various orders which had not yet been shipped as of that date. Following its usual accounting practice, the Corporation accrued as income the $27,042.38 in commissions receivable on the orders which had been shipped prior to the date such uncollected commissions were assigned to its stockholder as a liquidating distribution, but it did not report as income the amount of $57,172.77, which was subsequently collected by its stockholder as commissions on the unshipped orders. Respondent determined that such $57,172.77 constituted income to the Corporation. Respondent’s principal argument herein is that despite the Corporation’s practice of accruing commissions only upon the shipment of the merchandise from the foreign ports, under the terms of its agency contracts with its foreign exporters, as interpreted under the law of the State of New York where the contracts were executed, the Corporation’s rights to the $57,172.77 in commissions had become fixed prior to their distribution as a liquidating dividend and that they were, therefore, accruable as income by the Corporation. However, we need not decide whether or not the commissions were accruable by the Corporation prior to the assignment for we think that, even if not ac-cruable then, they are nevertheless taxable to it, under respondent’s alternative argument, as an anticipatory assignment of income. It is well established that where an individual assigns to another the right to receive the income from future services to be rendered by the assignor, such income, when earned and received, will nevertheless be taxed to the assignor. Lucas v. Earl, 281 U. S. 111 (1930). Similarly, if a taxpayer makes a gift of the right to receive all or a portion of the income from property, such property being retained by the taxpayer, the income will be taxable to the assignor when received by the assignee. Helvering v. Horst, 311 U. S. 112 (1940). And, if an individual who has negotiated certain contracts assigns his right to receive the commissions from such contracts as they are performed, he will be taxed upon the commission income as it is realized by the as-signee. Helvering v. Eubank, 311 U. S. 122 (1940). While most of the anticipatory assignment of income cases have related to donative assignments by individuals, the doctrine is equally applicable to corporations which may attempt to escape tax liability by directing that income properly payable to them be paid, instead, to their stockholders. United States v. Joliet & Chicago R. Co., 315 U. S. 44 (1942). The Corporation contends that the anticipatory assignment of income doctrine is inapplicable to the instant situation, arguing that it had liquidated and was no longer in existence at the time its sole stockholder acquired a fixed right to the commissions here in issue. However, a careful examination of the record discloses that although the Corporation had terminated the active conduct of its brokerage business by September 1, 1950, it appears to have continued as an active business entity well past the time the income from commissions was realized by its stockholder. It is true that the Corporation resolved to discontinue operations and to liquidate on August 29,1950; that on September 15, 1950, it assigned and distributed all its assets, other than cash, to its sole stockholder; and that on October 26, 1950, a certificate of dissolution of the Corporation was filed with the office of the secretary of state of New York. But after the filing of its certificate of dissolution, the Corporation continued the process of liquidation for it had liabilities to pay and had retained the assets with which to pay them. So long as this process continued, it remained a taxable entity. The filing of a certificate of dissolution did not terminate its taxable status.[2] See Elgin Compress Co., 31 B. T. A. 273 (1934); and Mrs. Grant Smith, 26 B. T. A. 1178 (1932). Although not engaged in the active conduct of its business, a corporation may nevertheless incur gains or losses during this period and such gains or losses are reportable on the returns which it must file. [Regulations 111, section 29.52-1, in effect during the year here in issue, imposed the following requirements for the filing of corporation returns: Seo. 29.52-1. Corporation Returns. — Every corporation not expressly exempt from tax must make a return of income, regardless of the amount of its net income. * * * A corporation having an existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets, and it continues in existence. * * * This regulation clearly indicates that so long as a corporation retains assets it is to be treated as a continuing taxable entity. See United States v. Kingman, 170 F. 2d 408 (C. A. 5,1948) ; Union Bus Terminal, Inc., 12 T. C. 197 (1949), affirmed per curiam 179 F. 2d 399 (C. A. 5, 1950). Though, in the instant situation the only asset retained by the Corporation after September 15,1950, was an undisclosed amount of cash, such cash was to be used for the fulfillment of a very vital corporate function, the satisfaction of its liabilities. This process, itself, could conceivably result in gain or loss reportable on its return for it is entirely possible that a corporation in the process of liquidation might satisfy some of its liabilities for less than the amounts set forth on its books. A corporation might well continue to incur various expenses during this period which would be deductible on its final return. See Commissioner v. Wayne Coal Mining Co., 209 F. 2d 152 (C. A. 3,1954), affirming a Memorandum Opinion of this Court, dated March 31, 1953; United States v. Arcade Co., 203 F. 2d 230 (C. A. 6, 1953), certiorari denied 346 U. S. 828 (1953); E. C. Laster, 43 B. T. A. 159 (1940), reversed on other grounds 128 F. 2d 4 (C. A. 5,1942); and Pacific Coast Biscuit Co., 32 B. T. A. 39 (1935). Although the record does not show at what date the last .of the Corporation’s liabilities had been paid, a series of cash distributions were made to its stockholder after September 15,1950, amounting to $13,610.18, and it appears that the last of such distributions was not made until July 1951. As of February 28, 1951, the end of its fiscal year, the Corporation had assets in the amount of $6,954.66 and liabilities aggregating $6,600.25. Therefore,.for tax purposes, this was not a dissolved corporation but, rather, a continuing taxable entity, a corporation in the process of liquidation. The entire $57,172.77 in commissions here in issue had matured into realized income prior to the end of this fiscal year and we, therefore, hold that the Corporation, having performed all the services necessary to earn such income and having remained in existence at the time such income was realized, is to be taxed thereon as an anticipatory assignment of income. See Cold Meted Process Co., 25 T. C. 1333 (1956). The Corporation contends that had it distributed all its assets, including cash, to its stockholder as a liquidating dividend on September 15, 1950, and had it provided that the stockholder was to assume all liabilities of the Corporation as of that date, there would be no question regarding the termination of its existence on September 15,1950. The Corporation argues that its decision to retain part of its cash and pay its liabilities itself resulted in a distinction without a difference. We do not so regard it for, as we have said above, a corporation may continue to realize gain or loss during the process of liquidating its liabilities and it, therefore, remains a taxable entity throughout this period. It is to be noted that the Corporation itself filed a final return under the heading “J. Ungar, Inc. (In Liquidation) ” for its fiscal year ended February 28, 1951. It should have reported on this return the $57,-172.77 in commissions which had accrued prior to the end of that fiscal year. The Corporation also contends that in no case has a corporation been taxed on income from property distributed in? complete liquidation to its shareholders, citing United States v. Horschel, 205 F. 2d 646 (C. A. 9, 1953); Pat O'Brien, 25 T. C. 376 (1955); and Herbert v Riddell, 103 F. Supp. 369 (S. D., Cal., 1952). However, these three cases are readily distinguishable since it appears that, in each, the corporation was no longer in existence at the time the income was realized by its stockholders. It is now firmly established that a corporation may distribute appreciated property as a liquidating dividend and that any gain realized upon the subsequent sale of such property by its stockholders is not taxable to the corporation. United States v. Cumberland Pub. Serv. Co., 338 U. S. 451 (1950). But where a corporation has performed all the services required to earn the income in question, and all that remains to be done before its efforts ripen into a fixed right to the income is to await the resolution of contingencies which will determine the amount of income accruable by the corporation, the assignment of the right to receive such income to its stockholder as a liquidating dividend does not bar the application of the anticipatory assignment of income doctrine. The fact that a corporation is in the process of liquidation does not exempt it from taxation on income which it has earned. By the foregoing discussion, we do not decide or imply that if the Corporation ceased its existence on September 15, 1950, a different result would be required. That is not this case. Reviewed by the Court. Decisions will be entered for the respondent. Withet, J., dissents. We note that under the law of New York the corporate existence of petitioner had not terminated despite the filing of the certificate of dissolution. New York Stock Corporation Law, section 105, provides that, after the filing of the certificate of dissolution: 8. Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name. ******* 10. At any time after three years from the filing of the certificate of dissolution of a corporation heretofore or hereafter dissolved pursuant to this section, the surviving directors or a majority of them, may give notice of the time and place for the presentation of all claims and demands against the corporation, which notice may require all creditors of and claimants against the corporation to present in writing and in detail at the place specified their respective accounts and demands to the directors by a day therein specified, which shall not be less than forty days from the first publication of such notice. * * *