THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

JOSEPH BOYD *et al.*

*Filed at Ottawa June 12, 1886.*

| 118 | 73 |
| 27a | 345 |
| 118 | 73 |
| 153 | 416 |
| 118 | 73 |
| 172 | 562 |
| 118 | 73 |
| 201 | ²463 |

1. LEASE IN PERPETUITY—*of its effect—as an absolute conveyance.* A grant and demise by one railway corporation of all its property, real and personal, with all its privileges and franchises, to another, in perpetuity, is equivalent to an absolute conveyance.

2. NOTICE—*by possession.* The actual possession by a railway company of a tract of land, under a verbal contract for a conveyance, to be made upon the performance of certain conditions, is notice to any subsequent purchaser from the party with whom the verbal contract was made, of all such rights as the company may have in the premises.

3. STATUTE OF FRAUDS—*performance, to take case out of the statute.* Where a verbal contract of the owner of land to convey a part thereof to a railway company for a section house, upon condition that the company would locate a station on the owner's other land and erect depot buildings thereon, and a house on the parcel donated, and such condition has been fully performed by the railway company, and possession taken by the original owner's consent, such performance of the contract will take the case out of the Statute of Frauds, and a specific performance will be decreed.

APPEAL from the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. SAMUEL RICHOLSON, and Mr. O. F. PRICE, for the appellant.

Mr. D. B. SNOW, and Mr. DUNCAN McDOUGALL, for the appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was brought by the Chicago, Burlington and Quincy Railroad Company, against Joseph Boyd and Freeman Poundstone, and was to enjoin an ejectment suit brought by defendant Poundstone, against complainant, to recover possession of the tract of land in dispute, and to compel a specific performance of an alleged verbal contract made with complainant, by defendant Boyd, for the conveyance to complainant of the premises in controversy. Prior to 1870, Boyd owned a quarter section of land, of which the lot in controversy is a part, over which what is called the "Fox River Railroad Company," a corporation existing under the laws of this State, was about to construct its railroad, and in order to induce that company to locate its depot upon lands of Boyd, and construct the usual buildings for depot purposes, and to construct switches and turn-outs at that point, he offered and agreed to convey to the company a certain amount of land to be used for depot grounds, and it was also alleged that defendant Boyd offered to convey to the company one acre of land adjoining the proposed depot grounds, for what is called a "section house," for the safe keeping of tools, and upon which to erect a dwelling house for its section foreman. The object defendant Boyd had in view in obtaining the location of a station depot and other buildings upon his land, was that he might thereafter lay out a town or village, and sell lots, so as to enhance the value of his property. In addition

to the land proposed to be donated to the railroad company, defendant Boyd, and one Crumrine, agreed to give the contractors constructing the road $1000 if the depot should be located at the point where they desired to have it. It was decided to locate and construct the depot, switches and turnouts upon the land of Boyd, and so it is alleged the propositions made by him were accepted by the company. It seems the "Fox River Railroad Company" became unable to finish the construction of the railroad it had undertaken to build, and afterwards, in 1870, it granted and demised to complainant, in perpetuity, all its property, real and personal, and all the privileges and franchises it had under its charter from the State. That was equivalent to absolute conveyance. Immediately thereupon complainant entered into possession, and commenced the work of finishing the road between the terminal points as originally proposed by the "Fox River Railroad Company," and it is then alleged, that Boyd, on being made acquainted with the rights of complainant in the premises, entered into an agreement with complainant to carry out and fulfill the agreement he had made with the former company concerning the location of a station upon his land, and to build a depot thereon, and, moreover, should build a house upon the one acre of land mentioned and described, and occupy the same by its section foreman, then he (Boyd) would convey, by a good and sufficient deed of conveyance, the real estate above described, including the one acre of land last above described, according to the agreement above set forth. It is then further alleged that the covenants and agreements of Boyd were then and there accepted by complainant, and that it fully and implicitly relied upon such agreements of Boyd, and complainant at once entered into possession of the one acre of land above described, with the full knowledge and consent of Boyd, and at once began to make permanent and valuable improvements upon such tract of land, and enclosed the most thereof with suitable fences,

and constructed a well thereon, at great expense,— being about $200,—and erected a building thereon at a cost of about $1000, and also erected out-buildings, stables and other necessary buildings, and that the value of the acre of land was but a small part of the value of such premises after the same were improved; that it has been in the continuous and uninterrupted possession of the premises from that time until the filing of this bill, and has, during that time, made valuable improvements thereon, with the full knowledge and consent of Boyd, and he has repeatedly promised to execute a deed of the premises to complainant, but has hitherto failed and neglected to do so.

The one-acre tract of land described, on which the "section house" and other improvements have been made, is the tract of land involved in this litigation. Long after the complainant had entered into possession and enclosed the premises, and improved the same by erecting a dwelling house and other buildings thereon, Boyd conveyed this one-acre tract, with other lands, to his now co-defendant, Poundstone. Of course, complainant's possession was notice to Poundstone of its rights in the property, and in the consideration of the case it will be treated as though the litigation concerned only complainant, and defendant Boyd. The answers filed by defendant insist upon the Statute of Frauds as a defence, otherwise what they contain is of no importance further than they put the matters alleged against defendants at issue. On the final hearing, the court dismissed the bill, and assessed solicitor's fees for defendants' counsel, against complainant, on the dissolution of the injunction that had previously been granted.

The point made in support of the decree dismissing the bill, that there is no testimony sustaining the making of the alleged verbal contract set up in the bill, is not well taken. It is insisted it is nowhere alleged in the original bill that any contract or agreement was ever made by and between Boyd

and complainant with reference to the donation of the lot in question. This is a misapprehension of the scope of the bill. It is alleged by way of recital, that in the first place, Boyd made to the Fox River Railroad Company, perhaps through the contractors to whom the building of the road was let, propositions concerning the location of the depot and other buildings at the station on his lands, to be called "Grand Ridge." But that company did not complete the road, and after complainant came into possession he renewed his propositions to complainant, and it is distinctly alleged, if complainant would build a house upon the one-acre tract in dispute, and occupy the same by its section foreman, then he (Boyd) would convey the one-acre tract to complainant. What is said concerning the proposition to the Fox River Railroad Company was simply by way of recitals, and might as well have been omitted. It may now be treated as surplusage, and it is immaterial whether the allegations in that respect are proved or not. A distinct contract is alleged on the part of Boyd to convey the land to complainant upon the performance of certain conditions, and the real question is, whether that contract has been proved, and whether it has been so fully performed that complainant can have a specific performance of it decreed in its favor.

The Statute of Frauds set up in the answer can have no application. There can be no doubt that complainant entered into the possession of the property under some sort of verbal agreement with Boyd for a deed, whether that agreement was absolute or conditional for a conveyance by deed thereafter to be made, and under that agreement, whatever it was, enclosed the lots, and erected a dwelling house, and made other valuable improvements thereon. That execution of the contract would relieve it from the operation of the Statute of Frauds. The only questions, then, that can arise in the case, are, whether Boyd made a contract with complainant to convey to it the lot in question, on condition complainant would

make certain improvements thereon, and whether such conditions have been fulfilled and performed. Such a contract, and full and complete compliance therewith, is sufficiently proved to warrant a decree for a specific performance. Of this there can be no reasonable doubt, when all the evidence is considered. Indeed, defendant Boyd admits he made a contract with complainant to convey to it the lot in controversy, that he placed complainant in possession under such contract, and no question is made that complainant has made such improvements on the property as it was obligated to do by the contract; but the excuse, and the only excuse, given now, for not conveying the property, as he had agreed to do, is, that the promise to convey was upon condition he (Boyd) should be permitted to construct shipping pens for his own use on the south end of a three-acre lot he had or was to convey to complainant, adjoining the track of the railroad. A witness, wholly disinterested, and who heard the original contract between the parties, says there was no such condition imposed by Boyd and none agreed to by complainant. Evidently Boyd is mistaken in what he says as to the terms imposed, that he should have the privilege to erect cattle or shipping pens on the track of the road, as a condition precedent or as a part of the contract for a conveyance. The contract to convey the one acre on which the section house was to be located, was made early in 1871, and the contract to donate the three acres, upon which he says he was to have the privilege to erect shipping pens, was not made until some time in 1872. Besides that fact in the case, Boyd's testimony in regard to the conditions imposed is not satisfactory at all. He says he was denied the privilege he had contracted for, but who *refused* him, or *when*, he does not pretend to state. On the first occasion when he spoke to any of the principal officers concerning the shipping pens, he was told he might erect them at any time, but he said he did not then want to do so, or had no use for them, as he was not

then shipping stock. The whole evidence considered, leaves not the slightest doubt the contract was made precisely as it was alleged in the bill. At that time Boyd owned about four hundred acres of land in the vicinity of Grand Ridge. He was exceedingly anxious to have the depot erected on his land. In the first place, Boyd and Crumrine had promised the contractors $1000 if the depot should be located where they wanted it, but Crumrine, it seems, refused to carry out the contract after the depot had been located on Boyd's land. There was then considerable talk of moving it to another location. Boyd gave the contractors his note for $500, which he afterwards paid, to secure the depot on his land. No doubt the donations of right of way and lands for other purposes were made to secure and retain the location of the depot, and with regard to the improvements to be placed on this one acre tract, Boyd very sensibly says: "Of course I did desire to have buildings and improvements put there so as to render it impossible for the company to move their station. That would be naturally so." The conclusion is well supported by the testimony, the contract to convey this one-acre lot to complainant was absolute and unconditional, except complainant was obligated to make certain improvements upon it, among which was a "section house" to be occupied by the section foreman of its road, all of which was done many years before the bill in this case was filed. No legal or equitable considerations appear why defendants should not convey the lot in question to complainant, and a decree should pass to that effect.

The decree dismissing complainant's bill, and the decree assessing damages against complainant on the dissolution of the injunction, will be reversed, and the cause remanded for further proceedings conforming to the views expressed in this opinion.

*Decree reversed.*