## UNITED STATES *v.* JOLIET & CHICAGO RAIL-ROAD CO.

No. 151.   Argued January 8, 1942.—Decided January 19, 1942.

*Mr. Arnold Raum* argued the cause, and *Solicitor General Fahy* and *Mr. J. Louis Monarch* were on a brief, for the United States.

*Mr. Arthur D. Welton, Jr.,* with whom *Messrs. Silas H. Strawn, Frank H. Towner,* and *Edward G. Ince* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

By an indenture denominated a "lease," respondent in 1864 granted, demised and leased to Chicago & Alton Railroad Co. all of its railroad property, real and personal.

The "lease" was in perpetuity upon specified terms and conditions. The Chicago & Alton Railroad Co. covenanted and agreed, *inter alia,* to guarantee and pay quarterly to the holders of the fifteen thousand shares of capital stock of respondent an annual dividend of seven per cent on the par value of the shares; to deposit with a designated depository specified monthly sums to be placed to the credit of the stockholders and to be held as a fund for the purpose of paying the dividends; to pay the dividends without any deduction for any federal tax whatsoever; to pay all taxes which may be due to the United States "on account of said dividend so paid from time to time"; and to pledge to respondent thirty-seven parts out of two hundred and fifty-seven parts of the gross receipts of the line between the cities of Alton and Chicago for the purpose of securing the performance of its various covenants. The "lease" contained no defeasance clause.

The annual dividend is $7.00 per share and totals $105,000.00. This amount has been paid directly to respondent's stockholders every year since 1864—by Chicago & Alton Railroad Co. until acquisition of the property in 1931 by the Alton Railroad Co., and since then by the latter company. The dispute here is over federal income taxes for the years 1931, 1932, 1933 and 1934. Respondent, a corporation organized and existing under the laws of Illinois, filed its income tax return for each of those years reporting the $105,000.00 of dividends paid its shareholders as its income. The resulting tax was paid each year by the Alton Railroad Co. In addition the latter paid each year for respondent an additional tax on the amount of the income tax on $105,000.00, on the theory that the latter constituted additional taxable income to respondent. Respondent filed claims for refund for the additional tax paid in 1931, and for all the income taxes paid on its behalf for the other years in question,

on the theory that the income on which those taxes were paid was not realized by it. On rejection of those claims by the Commissioner, respondent instituted suit in the District Court. That court rendered judgment for the petitioner. The Circuit Court of Appeals reversed, one judge dissenting. 118 F. 2d 174. We granted the petition for certiorari because of the conflict between that decision and the governing principles of *Gold & Stock Telegraph Co.* v. *Commissioner*, 83 F. 2d 465, *United States* v. *Northwestern Telegraph Co.*, 83 F. 2d 468, and *Pacific & Atlantic Telegraph Co.* v. *Commissioner*, 83 F. 2d 469, decided by the Circuit Court of Appeals for the Second Circuit.

Respondent urges, and the court below held, that this so-called lease in perpetuity without a defeasance clause divested respondent of all right, title and interest in the property and vested a full and indefeasible title in the grantee. See *Huck* v. *Chicago & Alton R. Co.*, 86 Ill. 352, 354–355; *Chicago, B. & Q. R. Co.* v. *Boyd*, 118 Ill. 73, 7 N. E. 487. Respondent also argues that the indenture of 1864 vested all rights to payment of dividends in its stockholders and divested it of any right to, or control over, such payments. Respondent therefore contends that a corporation which does not own or control property and has no right to, or control over, any income from the property cannot be in receipt of income, constructively or otherwise.

Such considerations do not dispose of this controversy. In *Lucas* v. *Earl*, 281 U. S. 111, this Court held that a husband's salary was taxable to him though by contract with his wife half of it vested in her when paid. Mr. Justice Holmes said (pp. 114–115): "There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skil-

fully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

Precisely that approach was taken in Art. 70 of Treasury Regulations 74, promulgated under the Revenue Act of 1928. It provides in part:

"Where a corporation has leased its property in consideration that the lessee shall pay in lieu of other rental an amount equivalent to a certain rate of dividend on the lessor's capital stock or the interest on the lessor's outstanding indebtedness, together with taxes, insurance, or other fixed charges, such payments shall be considered rental payments and shall be returned by the lessor corporation as income, notwithstanding the fact that the dividends and interest are paid by the lessee directly to the shareholders and bondholders of the lessor. The fact that a corporation has conveyed or let its property and has parted with its management and control, or has ceased to engage in the business for which it was originally organized, will not relieve it from liability to the tax."

That long-standing regulation[1] is plainly applicable here. It covers various kinds of conveyances and leases, including those where the grantor or lessor has parted with all rights of management and control over the property. If valid, it governs this case whatever may be the legal incidents of the 1864 indenture under Illinois law. Its validity seems clear. It is a permissible definition of

---

[1] This regulation dates from Art. 80, Treasury Regulations 33 (1914 ed.). And see Art. 102, Treasury Regulations 33 (1918 ed.). Provisions similar to those quoted in the text are contained in Art. 70, Treasury Regulations 77, promulgated under the Revenue Act of 1932 and in Art. 22 (a)–20 of Treasury Regulations 86, promulgated under the Revenue Act of 1934.

48

one item of gross income [2] under § 22 (a) of the Revenue Act of 1928, 45 Stat. 791, 797. Payments made directly to shareholders by the lessee or transferee of corporate property are properly recognized as income to the corporation by reason of the relationship of a corporation to its shareholders. The fact that there is an anticipatory arrangement whereby the taxpayer is not even a conduit of the payments is no more significant in this type of case than it was in *Lucas* v. *Earl, supra.*

The relationship between respondent and its shareholders is an abiding one. They obtain the dividend payments because of their status as shareholders. All questions of the rights of creditors aside, there can be no doubt that a corporation may normally distribute its assets among its stockholders. When it undertakes to do so, its act is nonetheless a corporate act though its shareholders receive new contractual rights enforceable by them alone against the transferee. That is to say, their rights to receive the proceeds on the disposal of corporate assets are strictly derivative in origin. The fact that the consideration is made distributable to them directly over a long period of time rather than in one lump payment does not alter the character of those rights. In each case their claims to the proceeds flow from the corporation and are measured by the stake which they have in it. For the rental or purchase payments for the property conveyed by respondent could not lawfully be paid to another without its authority; and it could not lawfully dispose of them to others without the consent of its shareholders. Cf. *Raybestos-Manhattan, Inc.* v. *United States,* 296 U. S. 60. The fact that the cor-

---

[2] Like definitions of gross income are contained in § 22 (a) of the Revenue Act of 1932 (47 Stat. 169, 178) and in § 22 (a) of the Revenue Act of 1934. 48 Stat. 680, 686.

poration may remain in existence only to maintain a stock transfer book is immaterial. The umbilical cord between it and its shareholders has not been cut. The distribution made is in performance of the obligation owed by the corporation to them. For these reasons the regulation in question merely conforms to accepted legal theory. The conclusion that the dividend payments made to respondent's stockholders were income realized by it likewise marks no innovation in income tax law. That is indicated not only by *Lucas* v. *Earl, supra*, but also by those cases which hold that, "Income is not any the less taxable income of the taxpayer because by his command it is paid directly to another in performance of the taxpayer's obligation to that other." *Raybestos-Manhattan, Inc.* v. *United States, supra*, p. 64, and cases cited. The reach of the income tax law is not to be delimited by technical refinements or mere formalism. *Helvering* v. *Clifford*, 309 U. S. 331.

Since the dividend payments made to respondent's stockholders were income realized by it, the federal income tax on those sums which was paid by the Alton Railroad Co. was likewise income taxable to respondent. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine R. Co.*, 279 U. S. 732.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court affirmed.

*Reversed.*

MR. JUSTICE ROBERTS did not participate in the consideration or decision of this case.