## BROOKLYN & RICHMOND FERRY CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 72, Docket 20997.

United States Court of Appeals
Second Circuit.

Dec. 23, 1948.

A. Chauncey Newlin and Ryder Henry, II (White & Case, of New York City, of counsel), for petitioner Brooklyn & Richmond Ferry Co., Inc.

Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Lee A. Jackson, and Irving I. Axelrad, Sp. Asst. to Atty. Gen., for respondent Commissioner of Internal Revenue.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, Ferry Company, had an exclusive right to operate ferryboats from

Bay Ridge, Brooklyn, to St. George, Staten Island, for a term of twenty years beginning March 31, 1934. The franchise was not assignable without the consent of the City of New York which had granted it and was subject to cancellation for certain specified defaults of the petitioner, including failure to operate ferries, and after ten years without default. The ferryboats were completely out of repair and the only valuable property of the company consisted of the terminals which it owned and its franchise to operate ferries. Under the circumstances, it was essential that the petitioner should make immediate arrangements to secure ferryboats for operation in order to avoid default under its franchise. May G. Schoonmaker, who owned all the stock of the petitioner, made an unsuccessful attempt to sell her stock to Electric Ferries, Inc., a corporation that operated ferries in other parts of the city. After failure to dispose of her stock, there were negotiations which resulted in the execution of an agreement by the petitioner, its sole stockholder, and Electric Ferries, Inc. This agreement provided that the petitioner and its sole stockholder "hereby rent, lease and set over unto the Lessee [Electric Ferries, Inc.] and the Lessee does hereby accept, the management and control of the Ferry Company from the Stockholder for the full balance of the term * * * and for any renewal or extension thereof, as hereinafter provided, and the Lessee agrees to pay to the said Stockholder as an operating expense of the business, ten (10%) per centum net, of the gross income from the operation of the said ferry line or business from whatever source derived, payable monthly * * *."

The Ferry Company also agreed "to turn over the management and operation of the * * * ferry line to the Lessee * * * to operate under the existing franchise and leases from the City of New York, and any renewals or extensions thereof."

The Lessee agreed to cause the Ferry Company to carry out all of the liabilities and obligations imposed upon it and to provide management for the ferry line and the necessary ferryboats and crews.

The stockholder agreed to put the Lessee in possession of the Ferry Company by transferring the ownership of all of her capital stock to the Lessee by placing it in the name of one Courtland Palmer as Escrow Agent. She also agreed to obtain the resignation of each of the existing directors and officers of the Ferry Company and to elect a board of four new directors, three of whom should be the nominees of the Lessee and one of whom should be the nominee of the stockholder. The Lessee likewise agreed to deposit with the Escrow Agent the resignation of each of its officers and directors, to be used by that agent only in the event of failure to pay the rental to the stockholder or of certain other defaults.

It was further provided that the Lessee should be entitled, through its management of the Ferry Company, to possession of the franchise and rights of the Ferry Company and thereby to possession of all of the physical assets of that company for the use and operation thereof and of all equipment and appliances appurtenant to the business. The stockholder agreed to pay all of the liabilities of the Ferry Company which had been incurred prior to March 1, 1939. The Lessee agreed to cause the Ferry Company to pay all taxes on its income and all expenses including sums to accrue to the City of New York for the franchise to operate the ferry line. It also agreed to cause the Ferry Company monthly to pay all obligations against it and not to permit any obligations to remain that were over forty days old. The Lessee also agreed to cause the Ferry Company to collect ferry tolls, but the latter was not to pay therefrom any salaries, dividends, or the charter hire due to the Lessee or to pay any other expenses not incurred in the operation of the ferry business until after the monthly payment due to the stockholder. Any dividend checks received by the Escrow Agent were to be endorsed over to the Lessee "as the owner of the stock held in the name of the Escrow Agent."

By amendments of the agreement, the payments by the Lessee to the stockholder were changed on November 10, 1939, so as to provide for an "annual rental" of $24,000 plus 10% of all gross income in excess of

$400,000 and later, on December 1, 1941, were further changed so that the "annual rental" was increased to $34,000.

During the taxable years, the Ferry Company chartered ferries from the Lessee on a bare boat basis, continued to operate under its franchise, to employ its own crews, and pay its operating expenses, including the cost of repairs to terminals. At undisclosed times, the Ferry Company declared dividends and paid them by check to the Escrow Agent, who endorsed over the checks to the Lessee. During the years 1939 to 1943 inclusive, the stockholder was paid directly by the Lessee pursuant to the terms of the original agreement and the amendments thereto in the amounts of $18,516.98, $24,000, $37,222.76, $34,000, and $34,000 respectively. The Lessee deducted these amounts as operating expenses for federal tax purposes, but the stockholder included them in her income tax returns for the respective years and paid taxes thereon, but those amounts were not reported as income on returns filed by the Ferry Company. The income tax returns of the latter reported gross income and net losses, and there was a net loss in each of the taxable years. It deducted as an operating cost the charter hire of boats paid by it to the Lessee and certain annual sums of about $27,000 as management fees on the part of the Lessee.

In assessing the taxes of the Ferry Company for the years in question the Commissioner included as its income the amounts paid in those years to the stockholder by Electric Ferries. The Tax Court sustained the action of the Commissioner in treating the payments to the stockholder as income taxable to the petitioner. The question before us is whether that disposition of these items was proper.

The petitioner argues that the items represented only a consideration paid by the Lessee to the Ferry Company's sole stockholder for the right to vote her stock and thus to be in a position to control and manage the Ferry Company's affairs. But, in our opinion, the agreement was in effect a lease of the franchise and managerial rights of the Ferry Company to Electric Ferries,

Inc., and not in substance or effect a mere lease of the right to vote the stock of Miss Schoonmaker. It is but an instance of provisions in many other leases which we have had to consider where one company has leased its assets to another under an agreement by the latter to make payment therefor directly to the Lessor's stockholders. The sole stockholder of the present taxpayer was only brought into the picture in order to obtain from her an irrevocable consent to the leasing of all the corporate assets. If she had not joined, there would have been doubt about the effectiveness of the lease. Even if the agreement was at least temporarily valid, she could have later voted the board of directors that made it out of office as soon as the next annual meeting was held and could thus have terminated the arrangement. She chose to continue to operate the business through the Ferry Company under a contract by which another company, acting as managing agent of the first company, was to charter to the latter new ferryboats. The managing agent was to be placed in substantial control of the assets of the taxpayer but the latter always had to be kept alive as the owner of the franchise, the terminals and the business in order to prevent that business from ceasing to exist. Such relations of the taxpayer and Electric Ferries, Inc., were so close to those of lessor and lessee that the facts seem to fall within the ruling of the Supreme Court in United States v. Joliet & Chicago R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658, and various other decisions we have ourselves made. The taxpayer while still owning the franchise and the terminals and conducting the business through a managing agent had become in substance a mere lessor of these rights to another company under an agreement for a payment of rental by that other company directly to the stockholder. We can see no reason for eliminating income from taxation which seems to have been earned through the use of the taxpayer's property.

For the foregoing reasons, the order of the Tax Court is affirmed.