**Alvin SHEERR, Plaintiff,**

v.

**Francis R. SMITH, formerly Collector of Internal Revenue, Defendant.**

**Civ. A. No. 15750.**

United States District Court
E. D. Pennsylvania.

Jan. 31, 1957.

Herman H. Krekstein, Gerald Krekstein, Sol Spiegel, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Alan Swotes, Asst. U. S. Atty., Philadelphia, Pa., Philip R. Miller, Atty., Tax Division, Dept. Justice, Washington, D. C., for defendant.

GRIM, District Judge.

This is an action by a taxpayer to recover $41,250.14 in income taxes and interest for the years 1945 and 1946, assessed against him and paid by him on income tax which he claims was not his but his wife's. Under the income tax laws then in effect the total taxes payable by the husband and wife would have been less if the income had been partly attributable to each.

There was first a partnership of four brothers and a sister. Later the brothers purported to admit their wives as partners. Plaintiff is one of the brothers. He contends that his wife was a true partner for all purposes including income tax purposes. The government contends that for income tax purposes she was not. He sues here to recover amounts of taxes paid which he contends were overpayments resulting from the determination that his wife was not a partner. The problem of the income taxes of the other brothers and their wives and sister is not before me.

In 1947, the four Sheerr brothers, Robert, Maurice, Alvin (the plaintiff), and Stanley, formed a partnership, Arms Textile Manufacturing Co., to manufacture and deal in textiles (principally hair canvas, used as inner lining in men's suits), with a plant at Manchester, New Hampshire. All of them took an active part in managing and running the business. Alvin was the most active, and lived for a time in Manchester. He married Vivian Sheerr in June, 1942. He began active duty in the Navy the month before the marriage and remained in the service, principally at Newport, Rhode Island, until the early fall of 1945.

In 1941 their sister Pearl Sheerr Bensinger contributed to the partnership capital the sum of $50,000 which she had received some eight or ten years before from their father, and was admitted as a partner. She was to share in the profits and losses, but was not to and did not perform any services for the partnership or receive any salary.

In 1944 the partners felt that the firm would need additional capital to buy new machinery and repair parts when the end of the war would make them available. Although the partnership had made very large profits during the war, high wartime tax rates had made it impossible to save enough money out of the profits to provide the needed capital. The partnership had just made a profit of over $1,200,000 in a ten-month period, and from an income tax standpoint it was advantageous to permit the wives of the brothers to contribute the new capital and become partners in the business. The brothers, including Alvin, decided that the source of new capital would be their wives. On October 30, 1944, a new partnership agreement was executed in which the wives of the brothers purported to be partners along with the brothers and sister.

Alvin's wife Vivian had no money of her own to make her partnership contribution and no established credit. To enable her to make the contribution, arrangements were made for her to borrow $55,000 from the National Safety Bank of New York, later Chemical Bank & Trust Company. With this money she made her $50,000 contribution to the capital of the partnership. She had never before dealt with the National Safety Bank. The loan was arranged by Robert Sheerr, one of the brothers. The note was sent to Vivian in Newport for her signature. Alvin, her husband, executed an instrument guaranteeing payment of the loan. It was this guarantee which made the loan possible.

Repayments were made out of partnership profits directly by the partnership to the bank, as follows:

| February 26, 1945 | $20,000 |
| June 29, 1945 | 6,000 |
| October 31, 1945 | 10,000 |
| | $36,000 |

Alvin repaid $9,000 more of the loan in the form of three $3,000 gifts from him to Vivian, and the $10,000 balance was repaid from profits of a successor family corporation.

The partnership continued until January 7, 1946, when its assets were transferred to the family corporation,[1] Arms Textile Manufacturing Co., and each named partner was given a number of

---

1. Vivian's 1946 income tax return shows partnership income from Arms Textile during its fiscal year ending January 31, 1946, as substantially her sole income for the calendar year 1946.

shares of stock and a principal amount of debenture bonds in proportion to his or her interest under the partnership agreement. Vivian, for example, received 250 shares of $100 par value stock and $25,000 of debenture bonds. Each named partner thereafter received dividends on the stock and interest on the bonds. The bonds were redeemed in 1952 and 1953 and each holder received the proceeds thereof. The former partners sold all their stock in the corporation in 1954 to another corporation, Crown Manufacturing Company.

Vivian's share of the partnership profits totalled $77,366.43. From the successor corporation she received dividends and bond interest totalling $45,300. Therefore, from her borrowed contribution of $50,000 she received an income of $122,666.43.

Out of the dividends, interest, and partnership profits Vivian loaned Alvin a total of $22,500 for furnishing their new home. The loan agreement was unwritten. The loan bore no interest and had no due date. Vivian had no definite idea when it would be repaid. According to her testimony it would have been all right if it were repaid in ten years or a hundred. When repayment was made it was made not in cash, but by Alvin's using his own money to buy stock in Vivian's name, as follows:

| | |
|---|---|
| 100 shares Consolidated Edison | $ 4,562.63 |
| 100 shares Am. Tel. and Tel. | 17,425.00 |
| 200 shares Base Metals | 102.09 |
| | $22,089.72 |

All these shares were bought by Alvin or selected on his advice with the exception of Base Metals, which was Vivian's choice.

Some of the income which Vivian received from the partnership and the corporation she spent for luxuries for herself, but most of it, after payment of income taxes (which were paid in full directly by the partnership on the theory that this was Vivian's income) was invested in corporate securities and one piece of real estate. All of these invest-

ments (except for the trifling Base Metals item) were selected and made on the advice of Alvin.

The partnership agreement dated October 30, 1944, was full and detailed, but the performance in several particulars was at variance with the requirements of the agreement.

Paragraph 5 provided that partnership funds might be withdrawn from depositories on the signature of any one of the partners. By instruments dated November 10, 1944, and signed by all the partners the four brothers only were authorized to sign checks.

Paragraph 17 of the partnership agreement provided: "the policies of the partnership shall at all times be subject to and be formulated by a majority of the partners", thereby indicating that all the partners were to have a share in the management of the business. In actual fact the business was conducted and the policies were formulated entirely by the four brothers. The wives and sister received no salaries, actually performed no services, and had practically nothing to do with the conduct of the business. Vivian had nothing at all to do with the running of the business. She rendered no service for it. She took no part in managing it. She did not consult with the other partners about it. Indeed, because of her lack of business training and experience she would have been of no help in the management of the business if she had been consulted.

Paragraph 8 of the agreement provided for distribution of estimated profits "in such amounts as the partners shall in each distributive period determine." There is no evidence, however, to indicate that Vivian or any of the women participated in any of the decisions relative to the distribution of partnership profits.

■ There were, therefore, significant discrepancies between the elaborate legalistic façade of this partnership agreement and the actual operation and structure of the partnership itself as a business association. Vivian's complaisant acceptance of the passive role which the brothers assigned to her

constituted not only a clear disregarding of the explicit provisions of the partnership agreement, but a strong indication that there was no intent on the part of the brothers or Vivian that she be a true partner.[2]

It is something of an oversimplification to say, and yet it is essentially true, that this is just another case where a husband, to avoid income tax, has made his wife his business partner by giving her an interest in his business.[3]

It should be recognized that in a manufacturing business such as Arms Textile Manufacturing Co., there are two important elements, namely, capital and management.[4] It would seem that a purported partner who has contributed nothing to a business by way of capital or management would hardly be considered a true partner for income tax purposes. The United States Supreme Court has so indicated in the companion cases of Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S. Ct. 539, 90 L.Ed. 679. In Tower case the court said, 327 U.S. at page 290, 66 S.Ct. at page 537:

> "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner * * *."

2. "And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'" Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 287, 66 S.Ct. 532, 536, 90 L.Ed. 670.

3. Alvin did not make a direct gift to Vivian of an interest in the business. By extending his credit for her benefit, however, he, in substance, accomplished the same thing, See Smith v. Henslee, 6 Cir., 1949, 173 F.2d 284. This is only

But it said also: 327 U.S. at page 289, 66 S.Ct. at page 537.

> "The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership."

The test of whether the wife has contributed capital which originated with her or vital services was applied too literally on occasion and in disregard of the Supreme Court's other statement that "The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership." Consequently, the Supreme Court returned to the problem in Commissioner of Internal Revenue v. Culbertson, 1949, 337 U.S. 733, at pages 741–742, 69 S.Ct. 1210, at page 1213, 93 L.Ed. 1659, and said:

> "We turn next to a consideration of the Tax Court's approach to the family partnership problem. It treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis. It ignores what we said is the ultimate question for decision, namely, 'whether the partnership is real within the meaning of the federal revenue laws' and makes decisive what we describe as 'circumstances (to be taken) into consideration' in making that determination. * * * The question is

a slight variation from the numerous family partnership income tax cases which have come before the courts. In the words of Professor Bruton it is one of "the crop of family partnerships which soon began to sprout in the soil of World War II surtaxes." 98 U. of Pa.L.R. 143, 148.

No gift tax was paid. No contention was made that gift tax was due.

4. This is not an attempt to minimize the importance of labor in business. For purposes of this opinion labor can be included within management.

not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." [5]

■ It is clear in the present case that Vivian Sheerr contributed no services to the partnership and she contributed nothing to its management. Her purported capital contribution was something which was contributed solely by the use of her husband's credit. It is my conclusion that Alvin and the other brothers did not in good faith with a business purpose intend to join Vivian as a partner in the conduct of the enterprise and, therefore, in contemplation of the income tax laws the income was not her money but Alvin's.[6]

Except to avoid or reduce income taxes, there was no business reason whatever for joining Vivian as a partner.[7] Because of her lack of training and experience she had nothing to offer the

partnership by way of services or advice. The money which she brought to the partnership could just as easily have been brought to it by Alvin directly. The brothers' failure, despite the explicit provisions of the carefully-drawn partnership agreement, to consult with Vivian about the policies of the business and about the distribution of profits, as well as their failure to permit her to draw checks on the partnership bank accounts, is further strong evidence that there was no intent that she be joined as a partner in the conduct of the enterprise.

Plaintiff places great reliance on the case of Ardolina v. Commissioner, 3 Cir., 1951, 186 F.2d 176, in which a husband-and-wife partnership was held valid for income tax purposes. The Ardolina case is distinguishable from the present case, however, in that Mrs. Ardolina had contributed $500 of her own money to the business when it was small and when a $500 contribution of capital was a very important one. She was also clearly the owner of the partnership interest later given to her, as shown by her untrammelled use and enjoyment of her share

5. Congress appears to have eliminated the element of intent by Sec. 340(a) of the Revenue Act of 1951, 26 U.S.C.A. § 3797(a) (2). See Sec. 704(e) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 704(e).

6. It is enlightening to compare the present case with those in which a taxpayer assigned a right to income without transferring the source of the income. In Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, the taxpayer transferred bond interest coupons for future interest without transferring the bonds. In Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, a taxpayer insurance agent assigned the right to receive insurance renewal commissions to a person who had not earned the commissions. In Lucas v. Earl, 1930, 281 U.S. 111, 50 S. Ct. 241, 74 L.Ed. 731, a husband assigned a half interest in his future earnings to his wife. In United States v. Joliet & Chicago Railroad Co., 1942, 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658 rents under a lease were made payable not to the lessor corporation but

directly to its stockholders. In each case the Supreme Court decided that the income was still taxable to the assignor despite the assignment. In the Lucas case, supra, Justice Holmes speaking for the Supreme Court said: 281 U.S. at pages 114, 115, 50 S.Ct. at page 241.
"* * * This case * * * turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

7. An additional impelling reason for the transfer to Alvin's wife was his generosity toward her. This reason is beyond cavil, but it is not a *business* reason.

of the partnership profits. In the case at bar, the partnership interest in the name of Vivian Sheerr was not hers to have and enjoy freely, but overwhelmingly under her husband's control. Also, apparently, Mrs. Ardolina had some part in the management of the business since it was said, at page 182: "Her background was one of competent, frugal management."

Since the parties in the present case did not in good faith and acting with a business purpose intend to join together in the conduct of the enterprise, it is my opinion that for tax purposes the inclusion of Vivian Sheerr in the partnership must be disregarded.

The facts and law stated herein constitute the court's findings of fact and conclusions of law.

Judgment will be entered in favor of the defendant.