19777

R. C. SCOTT and Marjorie R. Scott, Respondents, v. SOUTH CAROLINA TAX COMMISSION, Appellant

(202 S. E. (2d) 854)

*Messrs. Daniel R. McLeod, Atty. Gen., Joe L. Allen, Jr.,* and *G. Lewis Argoe, Jr., Asst. Attys. Gen.,* of Columbia, *for Appellant,*

*Messrs. Derrick & Byrd,* of Edgefield, *for Respondents,*

February 21, 1974.

BRAILSFORD, Justice:

In this action to recover additional South Carolina income taxes for 1966 and 1967 paid under protest, the plaintiffs are husband and wife. The husband is a retired naval commander. Prior to his retirement from active service in 1961, the husband made an irrevocable election under the Federal Retired Servicemen's Family Protection Plan, 10 U. S. C., Sec. 1431 *et seq.*, to have certain sums withheld from his statutory retirement pay and applied to the purchase of an annuity payable to his wife for life should she survive him. For 1961 through 1965 the spouses reported his full statutory retirement pay in gross income on federal and state income tax returns. As authorized by Pub. L. 89-365, 80 Stat. 32, 26 U. S. C., Sec. 122, enacted by Congress in 1966, they excluded from gross income on their federal income tax return for that year the sum of the family plan reductions in his retirement pay for 1961 through 1966, amounting to $3,256.20; and, as authorized by the federal statute, they excluded from gross income on the 1967 return the reduction in his retirement pay for this purpose in that year.

On the joint returns of the spouses for South Carolina income tax for 1966 and 1967 the exclusions from gross income allowed by the federal statute for federal income tax purposes were applied *sub silentio*. The South Carolina Tax Commission disallowed these "deductions" and assessed an additional tax of $231.06, which is the subject of this controversy.

The broad definition of gross income in the South Carolina Income Tax Act, Sec. 65-251, Code of 1962, and that in the Federal Income Tax Act, 26

U. S. C., Sec. 62, are substantially the same. Clearly, however, a special exclusion from gross income for federal income tax purposes generated by federal statute does not mitigate the obligation of a state income taxpayer. Whether conformity in this respect with the federal statute should be accomplished is strictly for legislative judgment.

The argument that the consideration for the annuity should not be included in the husband's gross income because by his irrevocable election he will never get his hands on the money is unsound. The benefit to the husband is essentially the same as though he had contracted with an insurance company for such an annuity for his wife on her surviving him and assigned this part of his retirement compensation to the company to pay the consideration therefor. The tax statute includes in gross income all compensation for personal service "of whatever kind and in whatever form paid." Surely, the annual consideration for the annuity contract is part of the husband's compensation. As such, "in whatever form paid" it is includible in gross income. It is interesting to note that the federal statute granting the exclusion from gross income refers to the sum of such exclusions as the "consideration for the (annuity) contract." 26 U. S. C., Sec. 122(b).

In our view, the following rationale quoted from *Helvering v. Horst,* 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75 (1940), is fully applicable:

"The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. . . . The power to dispose of income is the equivalent of ownership of it." 311 U. S. at 117-118, 61 S. Ct. at 147.

Reversed.

Moss, C. J., and Lewis and Littlejohn, JJ., concur.

Bussey, J., dissents.

BUSSEY, Justice (dissenting):

Being unable to concur in the opinion of Mr. Justice Brailsford, I most respectfully dissent. The exclusionary provision of the Federal statute, of course, does not mitigate the obligation, if any, of a State income taxpayer, but I do not agree that the sums withheld from the statutory retirement pay of Cdr. Scott constitute income within the purview and intent of the South Carolina Income Tax Law.

Cdr. Scott, a native of Edgefield County, served in the United States Navy from 1935 to 1961, being away from South Carolina in active service twenty-six years. Upon his retirement he returned to and established a home in Edgefield County, claiming South Carolina as his legal residence since that date. The irrevocable election made by Cdr. Scott with respect to his statutory retirement pay and the provision for an annuity for Mrs. Scott, should she survive him, was made in 1953, the Cdr. being required at that particular time to make whatever election he wished, or forfeit the right to avail himself of the plan. Under the retirement plan elected by Cdr. Scott, neither he nor his estate nor any member of his family, other than Mrs. Scott, will ever receive any economic or monetary benefit from the amount by which his retirement pay was reduced. Any economic benefit to Mrs. Scott is for her life only and dependent upon the contingency of her surviving Cdr. Scott.

While Sec. 65-251 of the 1962 Code broadly defines the term "gross income" as income derived from various sources, nowhere in the statutory law is the word "income" itself defined. It is well settled, however, by our decisions that the word "income" as used in the tax statute is to be taken in its ordinary sense of gain or profit. *Southern Weaving Co. v. Query*, 206 S. C. 307, 34 S. E. (2d) 51. For tax purposes, the term "income" means an actual gain or actual increase of wealth. 85 C. J. S. Taxation § 1096, p. 730.

It is also a well established rule of construction that a tax statute is not to be extended beyond the clear import

of its language, and that any substantial doubt as to its meaning should be resolved against the government and in favor of the taxpayer. *Beard v. S. C. Tax Commission,* 230 S. C. 357, 95 S. E. (2d) 628; West's South Carolina Digest, Statutes, Key No. 245. That which is not income cannot be made taxable by calling it income, and there is no income subject to taxation unless there is an economic gain or profit realized or actually received. Of course, there can be constructive receipt of income but for there to be such, the recipient must have an unqualified right to the use and enjoyment of the money or other property said to be income. There must be no strings on the taxpayer's right to receive and do with the income what he pleases. 85 C. J. S. Taxation § 1096, p. 734.

"Income is earned and received for tax purposes 'when all events have occurred which fix its amount and determine the liability of the party from whom it is forthcoming to pay.' *Adams v. Burts,* 245 S. C. 339, 140 S. E. (2d) 586." *Woodward v. S. C. Tax Commission,* 254 S. C. 175, 174 S. E. (2d) 344.

Under the foregoing principles of law, I am convinced that the portion of Cdr. Scott's retirement pay, which he, in 1953, irrevocably elected not to receive, does not constitute income within the purview of the South Carolina Income Tax Law. Such does not result in any economic gain or profit whatever to Cdr. Scott nor inure to the benefit of his estate. Neither did such inure to the economic benefit of any member of the Cdr's family during the tax years involved, and even any possible economic benefit to Mrs. Scott in the future is an entirely contingent one. Her contingent annuity has no cash surrender or market value. The Cdr. not only received no economic gain or profit therefrom but the title thereto has never been vested in him, and any control thereover which he formerly, prospectively and contingently had was irrevocably relinquished eight years prior to his returning to South Carolina; long before his entitlement to re-

tirement pay in any amount, and thirteen years prior to the first tax year now involved.

The case of *Helvering v. Horst,* 311 U. S. 112, 61 S. Ct. 144, 85 L. Ed. 75 (1940), quoted from by Mr. Justice Brailsford, is, in my view, not at all in point or persuasive of the result which we should here reach. In the *Horst* case, a father was a very wealthy taxpayer who in each of two succeeding years transferred to his son interest coupons of the approximate value of $25,000, such coupons being clipped from bonds owned by the father. The coupons were cashed by the son and the proceeds included in the tax return of the son, rather than that of the father, for the obvious purpose of paying tax thereon at a much lower rate. In each instance, the entire transaction took place within the respective tax years and the United States Supreme Court in a six-three opinion held that the proceeds of the coupons were income to the father rather than income to the son for tax purposes. Unlike the present case, substantial cash money was actually received within the family circle within the tax year and the taxpayer had within the tax year complete control as to whether it would be received by him or some other member of his family. In *Horst* "income" was indisputably received within the tax year, the question being who received it? Here the question is whether there was income.

Research has disclosed to the writer no case precisely in point with the facts of the instant case, but there are well reasoned decisions from the Supreme Court of Massachusetts, which are in accord with principles which are well established in this State and they are, according to my mind, persuasive of the result we here should reach.

In *Commissioner of Corporations and Taxation v. Williston,* 315 Mass. 648, 54 N. E. (2d) 43 (1944), the taxpayer, in two successive years at about Christmas time, gave to a married daughter living in New York, at least inferentially as Christmas presents, certain detached interest cou-

pons, the coupons in each instance not being payable until the following year. The interest upon the coupons was, of course, collected by the donee daughter, but the Commissioner sought to tax the proceeds as income of the taxpayer donor for the years in which the coupons became due and were cashed. The Commissioner relied, *inter alia,* on the *Horst* case, above mentioned, but the Massachusetts court declined to follow the same. The following language from the Massachusetts case is, I think, quite sound and applicable to the controversy here.

"The commissioner contends that, in the absence of proof of an actual receipt of income by a taxpayer, a constructive receipt may be proved and this will be sufficient to support the levy of the tax. Liability to a tax can be supported only upon a solid foundation of facts sufficient to bring the case within the scope of the taxing statute. It must rest upon something more than a well turned phrase or a convenient label. Taxing statutes are to be strictly construed, and if the right to tax is not plainly conferred then such a right is not to be implied, *Coolidge v. Commissioner of Corporations and Taxation,* 268 Mass. 443, 167 N. E. 757; *DeBlois v. Commissioner of Corporations and Taxation,* 276 Mass. 437, 177 N. E. 566, and the meaning of a constructive receipt so called must be limited to keep it consonant with this general principle governing the interpretation of taxing laws. A constructive receipt of income, we think, cannot be held to be the equivalent of an actual receipt, unless it can be seen that the taxpayer enjoys substantially the same material and objective benefits from the constructive receipt that he would enjoy if the income were paid directly to him or at least that he receives some economic or tangible advantage therefrom. The familiar example of such a constructive receipt is the application of the income or a part of it, with the consent of the taxpayer, by the person from whom it is due, to the discharge of some legal obligation owed by the taxpayer to a third person. *Commissioner of Corporations and Taxation v. Dalton,* 304 Mass. 147, 23

N. E. (2d) 147; *Commissioner of Corporations and Taxation v. Thayer,* 314 Mass. 375, 50 N. E. (2d) 11; *Old Colony Trust Co. v. Commissioner of Internal Revenue,* 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; *United States v. Hendler,* 303 U. S. 564, 58 S. Ct. 655, 82 L. Ed. 1018; *United States v. Joliet & C. R. Co.,* 315 U. S. 44, 62 S. Ct. 442, 86 L. Ed. 658. The discharge of an indebtedness is an economic benefit to the taxpayer and the result to him is the same as if the income was paid to him and he expended it in payment of his indebtedness. In the present cases the transfer of the coupons was a mere gratuity. The taxpayer did not thereby obtain any economic benefit. He received nothing for the coupons except the personal gratification of being able to aid and assist his married daughter. That is not an exchange for money or for money's worth or for anything of economic value. The law cannot value such a mental condition. See *Sullivan v. Old Colony St. R. Co.,* 197 Mass. 512, 83 N. E. 1091, 125 Am. St. Rep. 378; *Wheeler v. Balestri,* 304 Mass. 257, 23 N. E. (2d) 132.

"The taxpayer got nothing that can be said to have any pecuniary or financial value, and it would seem to be paradoxical to contend that by giving away his property a man acquires an increase in his economic wealth. The reverse would seem to be true. We are unable to see how any taxable benefit resulted to the taxpayer from the gifts of these coupons to his daughter."

In both the *Horst* case and the *Williston* case members of the taxpayer's family actually received tangible income. In the instant case neither of the taxpayers nor any member of their family received, had the right to receive, or had control of within the tax years any presently tangible economic gain or profit. Cdr. and Mrs. Scott received, and had the right to receive, only the personal gratification and peace of mind coming from the knowledge that if Mrs. Scott, perchance, survived Cdr. Scott, she would eventually actually receive some financial benefit for the remainder of her life; a state of mind which the law cannot value.

More recently, there was decided the Massachusetts case of *Trustees of Amherst College v. Commissioner of Corporations and Taxation,* 354 Mass. 503, 238 N. E. (2d) 351 (1968). That case is factually more in point with the instant case than any coming to the attention of this writer. Involved in that case were deductions from the salaries of professors and other college personnel for maintaining retirement plans. Contrary to the contention of the Commissioner the court held that such deductions did not constitute taxable income received by the personnel who elected to come under the retirement plan.

While convinced that the pay reduction or deduction from pay here, did not constitute "income" within the meaning of the statute, if there be any doubt thereabout, such doubt is required to be resolved in favor of the taxpayer.

I would affirm.